IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-10265
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GARY LEE WILLINGHAM,

Defendant - Appellant.


----------------------
Appeal from the United States District Court for the
Northern District of Texas, Abilene

----------------------
October 21, 2002

Before WIENER and STEWART, Circuit Judges, and RESTANI[*], District
Judge.

WIENER, Circuit Judge.

Defendant-Appellant Gary Lee Willingham was charged in a
single count indictment for violating 18 U.S.C. § 922(g)(1), felon
in possession of a firearm. After the district court denied
Willingham's motions to (1) declare the subject statute
unconstitutional and, (2) suppress the firearm in question and
statements given by Willingham, he entered into a conditional plea
agreement that allowed him to appeal, inter alia, the denial of his
aforesaid motions. Willingham was convicted on his guilty plea and

_____

[*] Judge of the U.S. Court of International Trade, sitting by
designation.

sentenced to serve 210 months in prison, to be followed by a five-year term of supervised release.  As precedent binds us to affirm the denial of Willingham's motion to dismiss the indictment on his asserted constitutional ground, and as we conclude that any error that the district court may have committed in denying Willingham's motion to suppress would be harmless, we affirm.

## I.

## FACTS AND PROCEEDINGS

On March 27, 2001, Willingham took a .410 Western Field shotgun, Model XNH-480C, bearing no serial number, (the "shotgun"), to Lone Star Pawn in Big Spring, Texas.  There he pawned the shotgun and received Lone Star Pawn ticket number 33738.  Later that day, Willingham returned to Lone Star Pawn and sought to redeem the shotgun out of pawn.  He signed an ATF Form 4473, on which he was presumably listed as owner of the shotgun and on which the descriptive nomenclature of the shotgun was set forth in detail.[1]  Although Willingham indicated on the ATF form that he had

---

[1]  The indictment, all filings in the district court, and the parties' appellate briefs, consistently — but erroneously — refer to the shotgun as a ".410 gauge."  In actuality, ".410" is a decimal fraction of an inch, usually referred to as a "caliber," which describes the inside diameter of a gun barrel.  Caliber is almost always used in connection with rifles and handguns, the .410 being the rare exception for shotguns.  In contrast, "gauge" is the central feature of an entirely different system of describing the inside diameter of a gun barrel and is employed exclusively in reference to shotguns.  Originally, "gauge" represented a figure equaling the number of balls or spheres of uniform diameter that could be made from one pound of lead: If, for example, 12 balls of the same diameter were produced from a single pound of lead, a

never been convicted of a crime punishable by more than one year's imprisonment, the report received by Lone Star Pawn through the National Instant Check System (instituted to comply with the provisions of so-called "Brady" Bill) reflected otherwise. This thwarted Willingham's efforts to redeem the gun; but the following day, his mother presented the same pawn ticket to Lone Star Pawn and redeemed the gun, apparently taking it back to the home she shared with Willingham.

Several months later, in connection with an unrelated investigation of local burglaries, county sheriff's deputies Allen and Ingram went to the Willingham home where they obtained Willingham's written consent to search the premises. During the course of the search, the deputies found the loaded, previously pawned shotgun under Willingham's bed. As that firearm was not one that had been reported stolen in the burglaries being investigated by the county deputies, however, they did not seize it.

Early in August, the county deputies returned to the Willingham home and arrested Willingham on charges of parole violations. On that occasion, at which Willingham's mother was present, the deputies located the shotgun in a gun rack in the mother's room and took it with them. Because the shotgun was not

---

shotgun with a barrel having the same inside diameter as one of those balls would be a "12 [no decimal] gauge" shotgun. There is no "gauge" measurement for those small shotguns with barrels that have an inside diameter of .41 inches or .41 caliber; it is referred to universally as a ".410" shotgun.

3

related to Willingham's state parole violation or the burglaries that the deputies had been investigating, they turned it over to the Bureau of Alcohol, Tobacco, and Firearms ("ATF").

Presumably alerted by feedback from the instant check system that had foiled Willingham's attempt to redeem the shotgun, Special Agent Melvin Dixon Robin of the ATF interviewed Willingham on August 6, 2001. The voluntary interview was conducted at the premises in which Willingham's parole officer had an office, but in another room. Agent Burtha of the ATF was present as well, but Willingham's parole officer was not; and at no time was Willingham "in custody." Nevertheless, Special Agent Robin first read Willingham his <u>Miranda</u> warnings while Willingham followed along on a copy of the ATF Statement and Waiver of Rights form. Afterwards, Willingham signed the form and voluntarily proceeded with the interview.

In the course of the interview, Willingham admitted that, on March 27, 2001, at Lone Star Pawn, he had pawned the shotgun, which is fully described on the ATF Form 4473, then unsuccessfully attempted to redeem it. He also acknowledged, that he had felony convictions predating March 27, 2001, and that his mother had redeemed the shotgun from Lone Star Pawn on March 28, 2001.

On August 14, 2001, a federal grand jury indicted Willingham, "a person who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year," for knowingly possessing "in and affecting commerce a firearm, <u>to-wit</u>: a Western

4

Field shotgun, Model XNH-480C, with no serial number," "on or about March 27, 2001," in violation of § 922(g)(1). The indictment in no way concerned Willingham's possession of the shotgun at any time other than March 27, 2001, whether subsequently in the home he shared with his mother where the deputies had seen and identified the gun as the same one pawned, or anywhere else.

In mid-November, the district court set Willingham's jury trial for December 3, 2001. This provoked a flurry of filings: Willingham filed motions to (1) dismiss the indictment for being based on an unconstitutional statute, and (2) suppress evidence, including statements given to the ATF agents and the shotgun itself, as obtained in violation of the Fourth Amendment; both parties filed proposed jury instructions, witness lists, and exhibit lists (the government's witness list included ATF expert Ernest H. Dishman; its exhibit list included the shotgun, the Lone Star Pawn ticket, the ATF Form 4473 completed by Willingham on March 27, the county Consent-to-Search form, and the ATF Statement and Waiver of Rights). On November 29, the court held a suppression hearing, at the close of which Willingham's motions to suppress and to dismiss the indictment were denied.

Instead of commencing Willingham's jury trial on December 3, 2001 as scheduled, the court conducted a rearraignment. Pursuant to a written plea agreement in which he reserved the right to appeal denial of his suppression motion and his motion to dismiss the indictment, Willingham entered a plea of guilty to violating

5

Section 922(g)(1).  Following a full plea colloquy, during which the court determined Willingham's understanding of his Plea Agreement and of the Factual Resume supporting the government's case, the court accepted Willingham's conditional guilty plea.  The Factual Resume —— which Willingham verified under oath in open court as being accurate and complete —— specified that (1) on or about the 27th day of March 2001, (2) Willingham, as a person who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, (3) knowingly possessed, in and affecting commerce, (4) a firearm, specifically the above-described .410 Western Field.  The Factual Resume also expressed that "[t]he shotgun was not manufactured in the State of Texas, and, therefore, moved in and affected interstate or foreign commerce."

Nowhere in the indictment, the Plea Agreement, or the Factual Resume, is there any mention whatsoever of Willingham's having possessed the shotgun on or about any date other than March 27, 2001.  Neither is there any mention of the shotgun's having been located in the Willingham home before or after that date; no mention of its seizure by the county deputies; no mention of its actually being in evidence.

Following acceptance of Willingham's guilty plea, the court ordered a Presentence Investigation Report (PSR) from the probation department.  And, after receiving the PSR, the court conducted a sentencing hearing and imposed sentence.  This appeal followed.

**ANALYSIS**

A. Constitutionality of 18 U.S.C. § 922(g)(1)

   1. Standard of Review

   Our review of the constitutionality of a federal statute or of the district court's interpretation of a statute is de novo.[2]  A district court's application of constitutional standards is also reviewed de novo.[3]

   2. Merits

   In his appellate brief, counsel for Willingham concedes, as he must, that, like the district court before us, we are bound by our own precedent, which rejects the constitutional arguments he presents.[4]  Furthermore, counsel acknowledges that he raises a constitutional issue solely to preserve it for further appellate review, specifically to preserve the right to seek certiorari.  We are constrained to affirm the district court's denial of Willingham's motion to dismiss his indictment on grounds of the facial and as-applied unconstitutionality of Section 922(g)(1).

B.  Motion to Suppress

---

[2] United States v. Rasco, 123 F.3d 222, 226 (5th Cir. 1997) (citations omitted), cert. denied, 522 U.S. 1083 (1998).

[3] See, e.g., United States v. Estrada-Trochez, 66 F.3d 733, 735 (5th Cir. 1995).

[4] United States v. Daugherty, 264 F.3d 513 (5th Cir. 2001), cert. denied, ___ U.S. ___, 112 U.S. 1113 (2002).

In his suppression motion in the district court, Willingham sought to preclude the government's introduction of the shotgun into evidence and also sought to prevent introduction of statements given by Willingham. On appeal, however, Willingham has only briefed and argued for suppression of the firearm. As issues not briefed or argued on appeal are deemed abandoned, the only object of suppression now before us is the shotgun itself.[5]

The government clearly intended to offer the shotgun into evidence: It is identified on the government's pre-trial list of exhibits, and the government vigorously opposed suppression. And, as the facts surrounding the government's acquisition of the shotgun from the county sheriff's department raise genuine questions regarding consent to the warrantless search of the home and seizure of the shotgun, Willingham's motion to suppress the gun was, at the very least, non-frivolous. Nonetheless, in light of all the other testimony and documentary evidence at the government's disposal, Willingham's efforts to suppress constituted a smoke screen or a red herring — choose your metaphor — and it worked: The prosecution went for it, forcefully opposing suppression.

We cannot fathom why the government expended so much time and effort (and caused such an expenditure of judicial resources) to fight suppression when — in this case, as in many — placing the

_____

[5] Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

8

allegedly possessed firearm itself into evidence was wholly unnecessary. Keeping in mind that Willingham was not indicted for possessing the shotgun in his home or anywhere other than the pawn shop, and on no day other than on March 27, 2001, even a cursory look at the wealth of evidence that the government had at its disposal shows that the shotgun was cumulative evidence at best. The government's evidence included:

! Lone Star Pawn ticket number 33738 of March 27, 2001.

! ATF Form 4473 dated March 27, 2001, fully describing the shotgun, reflecting Willingham as the owner, and containing his signature.

! Testimony available from pawn shop personnel to identify Willingham as the person who pawned the shotgun, received ticket number 33738, returned to redeem the shotgun, and executed the ATF Form 4433, all on March 27, 2001.

! ATF Statement and Waiver of Rights signed by Willingham on August 6, 2001, in the presence of Special Agent Robin and Agent Burtha, acknowledging that he had received his <u>Miranda</u> rights and consenting to being interviewed in the presence of the agent and without legal counsel in attendance.

! Testimony available from Special Agent Robin and Agent Burtha that, following Willingham's execution of the consent and waiver form, he acknowledged that he had a felony record; that he pawned the shotgun described on the ATF Form 4473 at Lone Star Pawn on March 27, 2001, receiving Lone Star Pawn ticket number 33738; that he attempted to redeem the shotgun the same day; and that he signed

9

the ATF Form 4473 that day, acknowledging his ownership of the gun and falsely stating that he had no prior felony convictions.

! Testimony available from ATF firearms expert Ernest Dishman that (as subsequently acknowledged by Willingham in verifying the Factual Resume for his guilty plea) neither this particular shotgun nor any other shotguns of similar make or model had ever been manufactured in the State of Texas, so that the shotgun had to have traveled in interstate or foreign commerce to get from its point of manufacture outside Texas to Willingham's possession in Texas in time for him to pawn it at Lone Star Pawn in Big Spring, Texas, on March 27, 2001.

The good news is that, when the time came for the government to prepare and file its appellate brief, it recognized —— at least in the alternative —— that "the error, if any, in denying the motion to suppress was harmless." First, the government correctly states the standard of review: "In the context of suppression of evidence, the test for harmless error is 'whether the trier of fact would have found the defendant guilty beyond a reasonable doubt [if the evidence had been suppressed].'"[6] We agree totally that introduction of the gun into evidence was not required for the government to prove its case beyond a reasonable doubt. The three elements of the crime that the government was required to prove are

---

[6] United States v. Aucoin, 964 F.2d 1492, 1499 (5th Cir. 1992) (quoting United States v. Moody, 923 F.2d 341, 352 (5th Cir. 1991)).

10

(1) Willingham's possession of the gun on March 27, 2001, (2) his prior conviction of one or more crimes punishable by a term of imprisonment of more than one year, and (3) the shotgun's prior travel in interstate or foreign commerce, all as charged in the indictment.[7]

The government had available a plethora of testimonial and documentary evidence which, if adduced at trial, would be more than sufficient to support a jury's finding that these three factual elements had been proved beyond a reasonable doubt. Willingham's post-<u>Miranda</u>-warnings admission of his prior felony convictions and his possession of the gun while pawning it on March 27, 2001 is well-supported by the pawn ticket and the ATF Form 4473 as well as live testimony of the pawn shop personnel, the ATF agents who interviewed Willingham, and state law enforcement personnel. The third and final element —— travel in interstate or foreign commerce —— would have been supplied easily by the ATF expert, based on the detailed firearm nomenclature on the ATF form[8] which, alone, was

---

[7] <u>Daugherty</u>, 264 F.3d at 515.

[8] <u>See</u>, <u>e.g.</u>, S. P. Fjestad, <u>Blue Book of Gun Values</u>, 1288 (20th ed. 1999). ("**Western Field**. Previous trademark used on Montgomery Ward rifles and shotguns. The Western Field trademark has appeared literally on hundreds of various models (shotguns and rifles) sold through the Montgomery Ward retail network. Most of these models were manufactured through subcontracts with both domestic and international firearms manufacturers."). "Most of these models were derivatives of existing factory models with less expensive wood and perhaps missing the features found on those models from which they were derived." <u>Id.</u>

sufficient to make the physical presence of the gun for examination by the expert and the jury wholly unnecessary.

We are satisfied that, even in the absence of the shotgun in evidence, a reasonable jury could have —— and almost certainly would have —— found Willingham guilty beyond a reasonable doubt of being a felon in possession of a firearm, at Big Spring, Texas, on March 27, 2001, and that the firearm had traveled in interstate or foreign commerce. It cannot be said, then, that if denial of the suppression were erroneous, so that allowing the gun into evidence would have been erroneous, the outcome of the case would likely have been changed.[9] Thus, even if we assume arguendo that Willingham is correct in asserting that the district court erred in denying his motion to suppress the shotgun, we remain firmly convinced that such error would be harmless. We therefore decline to expend any further judicial resources on the question whether suppression of that evidence was error. Absent harm, Willingham is not entitled to withdraw his guilty plea on the grounds of failure to suppress the shotgun from being introduced into evidence.

---

[9] See United States v. Hall, 587 F.2d 177, 182 (5th Cir. 1979) (if district court erred in denying the motion to suppress, error was harmless in light of other overwhelming evidence establishing guilt); United States v. Resnick, 483 F.2d 354, 357-58 (5th Cir. 1973)(error in admitting tainted evidence was harmless, as exclusion of the evidence would not have changed the verdict in light of the record as a whole).

### III.

### CONCLUSION

Section 922(g)(1) is not unconstitutional, either facially or as applied to Willingham. Thus, Willingham is not entitled to withdraw his plea or to any other relief based on the district court's refusal to dismiss his indictment. Neither is Willingham entitled to withdraw his plea or to any other relief for the district court's failure to suppress the shotgun recovered by county deputies from the home that he shared with his mother in Big Spring, Texas: The indictment charged him with possession of the shotgun that he pawned at the Lone Star Pawn shop on March 27, 2001 only. And the identity and specific characteristics of the pawned shotgun are more than sufficiently established by other documentary and testimonial evidence available to the prosecution to allow an expert to confirm that the shotgun was manufactured somewhere other than the State of Texas, leading to the unavoidable conclusion that it had been transported in foreign or interstate commerce, to the State of Texas. Finally, irrefutable evidence was available to the prosecutor to prove Willingham's prior felony convictions and his possession of the shotgun on the date of the pawn. Therefore, even if we were to review the district court's suppression ruling and find it erroneous, the error would be harmless. Stated differently, the shotgun was not necessary to the prosecution's case: Under the totality of the circumstances, an erroneous

13

introduction of the shotgun into evidence would not have been prejudicial to Willingham because its suppression would not have changed the likely jury verdict of guilty.  Therefore, we affirm his conviction on his plea of guilty in all respects.

AFFIRMED.