# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-41392

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

IVAN GARCIA-LOPEZ,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 11, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before OWEN, GRAVES, and HIGGINSON, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

This is an appeal by Defendant Ivan Garcia-Lopez ("Garcia-Lopez"). Garcia-Lopez entered a conditional plea to a single firearm violation, and now appeals the denial of his motion to suppress the firearms from which that violation and his resulting conviction flowed. For the reasons set forth below, we **AFFIRM**.

I.

On the evening of February 5, 2014, Wharton County Deputy Sheriff Raul Adam Gomez ("Deputy Gomez") arrived at the trailer home of Jaime Garcia ("Mr. Garcia") to serve a felony arrest warrant for his younger son, Yonari Garcia ("Yonari"). While Deputy Gomez approached the front door,

No. 14-41392

Wharton County Deputy Sheriff Lionel Garcia ("Deputy Garcia") stood at the back door to prevent a potential escape. Asked by Deputy Gomez whether Yonari was home, Mr. Garcia responded that he was not. Mr. Garcia then consented to Deputy Gomez's request to search the residence for Yonari. Prompted by his observation of a light in a distant room, Deputy Gomez asked Mr. Garcia whether anyone else was home. Mr. Garcia replied that his older son, Garcia-Lopez, was. At the time, Garcia-Lopez sat alone in his bedroom eating dinner.

Around the time Deputy Gomez entered the residence, Garcia-Lopez closed and locked his bedroom door. Finding Garcia Lopez's bedroom door locked, Deputy Gomez ordered the door opened immediately. After Garcia-Lopez unlocked the door, Deputy Gomez entered the bedroom, moved Garcia-Lopez aside, and began his search for Yonari.

Garcia-Lopez's bedroom, an add-on to the single-wide trailer home, had the following characteristics: ten feet by eleven feet in size, no closets, an unmade bed (comprised of only a mattress and box spring sitting flush to the floor), a dresser, and an entertainment center.

As Deputy Gomez walked around Garcia-Lopez's bedroom in search of Yonari, he noticed two bulletproof vests on Garcia-Lopez's bed. Garcia-Lopez asked to sit back on his bed to finish his meal. Deputy Gomez allowed him to do so. When asked, Garcia-Lopez told Deputy Gomez that the vests belonged to Yonari. Deputy Gomez, aware that Garcia-Lopez was in violation of 18 U.S.C. § 922(g)(1) (*i.e.*, convicted felon in possession of body armor), asked Garcia-Lopez to stand, cuffed his hands behind his back, and moved him over by the door of his bedroom. Deputy Gomez then radioed Deputy Garcia for assistance and held Garcia-Lopez until Deputy Garcia entered the bedroom. Two to three minutes had elapsed since Deputy Gomez first entered the home.

No. 14-41392

Deputy Gomez resumed his search of Garcia-Lopez' bedroom as Deputy Garcia held Garcia-Lopez's arm and kept an eye on Mr. Garcia. Deputy Gomez lifted Garcia-Lopez's mattress, finding a short barrel shotgun and two rifles. His search then progressed to a camouflaged, zipped backpack that sat on the floor next to the bed. Feeling the backpack's weight, Deputy Gomez unzipped it and found that it contained ammunition and three handguns, among other items.[1] Deputy Gomez continued his search for Yonari in Garcia-Lopez's bedroom, searching behind the dresser and entertainment center, but to no avail.

Upon completing their search of Garcia-Lopez's bedroom, neither deputy searched the remainder of the trailer home for Yonari. Instead, with Garcia-Lopez having been arrested, they left the residence with him in tow. Six to seven minutes had elapsed from the time of their arrival to their departure.

II.

On March 6, 2014, Magistrate Judge Jason B. Libby signed a criminal complaint charging Garcia-Lopez with possession of six firearms in violation of 18 U.S.C. § 922(g)(1). On March 26, 2014, Garcia-Lopez was charged by indictment with six counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment contained a notice of forfeiture pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c) as to the firearms and two sets of body armor.

On June 6, 2014, Garcia-Lopez filed a motion to suppress the items seized from his bedroom. The United States filed a motion to strike Garcia-Lopez's original motion claiming that it failed to specify a basis for suppression.

---

[1] The complaint alleges that three guns were found in the backpack. At the suppression hearing, Deputy Gomez testified that he found in the backpack "a Hi-Point, 9mm; another revolver; and ammunition." Deputy Gomez did not mention a third firearm. The most logical reading of the record appears to be that Gomez simply failed to mention a third firearm at the hearing. We assume that three guns were found in the backpack, but none of our conclusions would change if only two guns were found.

Garcia-Lopez then filed an amended motion to suppress, alleging that the deputies searched his backpack and under his mattress without permission and probable cause. The district court granted the United States' motion to strike Garcia-Lopez's original motion to suppress, but did not strike his amended motion to suppress. The United States then filed a response to Garcia-Lopez's amended motion to suppress.

The district court held a hearing on Garcia-Lopez's amended motion to suppress on August 6, 2014. At the conclusion of the hearing, the district court orally denied Garcia-Lopez's motion to suppress, ruling:

> Very well. I have considered the motion to suppress, the response; and I've heard the evidence; and I will apply the facts as presented by the evidence to the law that I believe applies in this case.
>
> First of all, it appears from the evidence presented that the law enforcement officers were in the home for a legitimate purpose. There's been no contradictory evidence that they did not have a warrant or that they were not given permission to come in. So, they were in the home legally for purposes of this motion. And the purpose -- and maybe we got – the evidence sort of got off track.
>
> The motion -- the purpose of them being there was to find Yonari. That was why they were there. It was an arrest warrant. It was not to find the Defendant in this case but Yonari. So, they had a right to search the home in an attempt to find the fugitive, Yonari. As far as the bedroom goes, as soon as the officer entered the bedroom, he saw contraband on the bed and, as a result of that, effectuated arrest of the Defendant in this case.
>
> Now, the issue then -- as we all know, when you arrest someone or you're in that situation, officers have a right to make a protective sweep. It is obvious from the law it may last no longer than necessary to dispel the reasonable suspicion of danger or it's no longer justified to remain on the premises. So, the issue in this case boils down to why we're here, and that's the lifting of the mattress. And I've

heard evidence from Deputy Gomez that in his experience people hide in between mattresses and, specifically, in mattresses that have been hollowed out. The defense has pointed out, well, there was no -- that mattress had not been hollowed out. Well, fine. But Deputy Gomez did not know that.

Deputy Marshal Hernandez has supported that, I guess, reasonable suspicion by Gomez with the fact that in his training and experience people have often hidden in hollowed-out mattresses, between box springs and mattresses. So, it certainly was reasonable since, even though the Defendant had been arrested, they were still there to look for Yonari. And he lifted the mattress in an attempt to see if anyone was hiding in there. That's, I think, a very reasonable -- that's reasonable conduct in connection with trying to execute an arrest warrant.

So, I find no unconstitutional conduct in this case, no constitutional violations that would support a finding that the evidence should be suppressed. So, the motion to suppress is denied.

On September 10, 2014, Garcia-Lopez made a conditional guilty plea to count one of his indictment, reserving his right to appeal the district court's denial of his motion to suppress. On December 1, 2014, the district court sentenced Garcia-Lopez to 46 months imprisonment, to be followed by two years of supervised release. The district court also dismissed the remaining five counts in the indictment and ordered all six firearms forfeited to the United States.

## III.

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo. United States v. Allen*, 625 F.3d 830, 834 (5th Cir. 2010). Where the defendant was arrested or subject to search without a warrant, the Government bears the ultimate burden of proof to justify the warrantless search. *United States v. De*

*La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). The district court's ruling should be upheld "if there is any reasonable view of the evidence to support it." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). We may affirm a ruling on a motion to suppress "on any basis established by the record." *United States v. Mata*, 517 F.3d 279, 284 (5th Cir. 2008).

Warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few specific exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971). The government advances two such exceptions: first, that the initial search of Garcia-Lopez's mattress was valid pursuant to the protective sweep exception and, second, that the subsequent backpack search was valid because it was incident to arrest.

IV.

We consider Deputy Gomez's warrantless search where he discovered three firearms lodged between Garcia-Lopez's mattress and box spring. Garcia-Lopez, arguing that Deputy Gomez's belief that Yonari might lay hidden between his mattress and box spring was unreasonable, urges us to hold that the warrantless search violated his Fourth Amendment rights. The district court, in denying Garcia-Lopez's suppression motion, held that the protective sweep exception supported the warrantless mattress search. We agree.

The scope of a valid "protective sweep" exception to the warrant requirement was the subject of the oft-quoted Supreme Court case, *Maryland v. Buie*, 494 U.S. 325 (1990). In *Buie*, the Supreme Court held that officers who are lawfully inside a residence to serve an arrest warrant may conduct a protective sweep with only reasonable suspicion. 494 U.S. at 327. It is not necessary that the officer have probable cause to believe that there might be an assailant hiding on the premises. *Id.* at 334. The Court noted, "[T]here must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the

area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

The Supreme Court, though, before discussing the facts in the case, outlined the restrictive scope of the protective sweep that governed its analysis. The Court stated:

> "[A] 'protective sweep' is a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers and others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 327.

Thus, evidence or contraband seen in plain view during a lawful sweep can be seized and used in evidence at trial. *United States v. Jackson*, 596 F.3d 236, 242 (5th Cir. 2010).

This circuit has often re-emphasized *Buie* in its inquiries as to whether evidence discovered during a protective sweep should be suppressed. *See United States v. Gould*, 364 F.3d 578 (5th Cir. 2004), *abrogated in other part by Kentucky v. King*, 563 U.S. 452 (2011); *United States v. Mata*, 517 F.3d 279 (5th Cir. 2008); *United States v. Roberts*, 612 F.3d 306 (5th Cir. 2010).

Relying on *Buie*, Garcia-Lopez emphasizes that (1) it is not reasonable that an attack could have been immediately launched from under his mattress; and (2) that the facts do not support a reasonably prudent officer's belief that anyone lay hidden under his mattress. The government, in contrast, relies on *Buie* to support its contention that Deputy Gomez had requisite reasonable suspicion to search under the mattress for Yonari and that neither deputy spent more time than necessary to conduct the sweep. We agree.

There is ample evidence to support the district court's finding of reasonable suspicion. Under the facts, Deputy Gomez first noticed a light on before hearing a door shut. Prior to these events, Deputy Gomez had been given

no concrete proof as to who might *actually* lie on the other side of the closed door. Upon entry, Deputy Gomez became suspicious that Garcia-Lopez's first order of business after their "standoff" over the locked door was to calmly request to sit back on his bed. In that moment, Garcia-Lopez's seemingly innocent request triggered something else entirely for Deputy Gomez. To Deputy Gomez, the request led to his belief that Yonari might lay hidden beneath the mattress in a hollowed box spring. Indeed, Deputy Gomez testified as much before the district court, stating ". . . . when I was looking for Yonari because he could possibly be hiding between the mattresses."

Garcia-Lopez attempts to cut at Deputy Gomez's suspicion by arguing the sheer improbability that an adult male could hide in the hollowed-out mattress without so much as a rise or bulge in the mattress. In support of his proposition, Garcia-Lopez directs the court's attention to cases like *United States v. Blue*, 78 F.3d 56 (2d Cir. 1996), and *United States v. Ford*, 56 F.3d 265 (D.C. Cir. 1995).

It is true that these cases held protective sweeps overbroad where officers searched under mattresses without justification. *See Ford,* 56 F.3d at 270; *see also Blue*, 78 F.3d at 61. But, unfortunately, in citing *Blue* and *Ford* (and similar decisions), Garcia-Lopez fails to take into account that it was logical under the specific facts of this case to suspect that a person might be hiding in a hollowed box spring.

Accordingly, we hold that the district court did not err in denying Garcia-Lopez's motion to suppress the evidence seized from under his mattress.[2]

---

[2] Having addressed the mattress search, in which three firearms—including the firearm particularized in Garcia-Lopez's count of conviction—were discovered, we decline to consider the constitutionality of the backpack search. Even if the guns found in the backpack were suppressed, the three admissible guns stemming from the justified mattress search are sufficient to support Garcia-Lopez's conviction and sentence. U.S.S.G. § 2K2.1(b)(1)(A). Hence, the denial of the motion to suppress the evidence seized from the backpack is inconsequential.

No. 14-41392

**AFFIRMED.**