# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2023

Lyle W. Cayce
Clerk

No. 22-20057

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TERRENCE SPIDELL DURHAM,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CR-276-1

Before JOLLY, HAYNES, and GRAVES, *Circuit Judges*.

PER CURIAM: *

Terrence Spidell Durham was charged with one count of attempt to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii). Durham moved to suppress all physical evidence seized during a search of his vehicle. The motion was denied by the district

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

court. He was ultimately found guilty following a bench trial. Durham timely appealed and now challenges the denial of his motion to suppress physical evidence, specifically the $100,000 cash and the drug test kit seized from his vehicle. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

The Drug Enforcement Administration ("DEA") was provided information that Durham was involved in the distribution of cocaine. He allegedly attempted to buy multiple kilograms of cocaine in Houston, Texas to distribute on the East Coast. DEA agents began investigating Durham and coordinated with the Houston Police Department to surveil Durham, and he was introduced to an undercover officer, Kimberly King. Durham and Officer King ultimately coordinated a "Buy-Bust" operation where Officer King negotiated a drug transaction with Durham and agreed to provide five kilograms of cocaine in exchange for $100,000 cash. Durham and Officer King met in a parking lot and were followed by surveillance units. There, they walked to the trunk of a black Infiniti sedan and Officer King observed a paper bag filled with cash and immediately signaled to the surveillance units to arrest Durham. During a search of the vehicle, $100,000 cash and a cocaine drug test kit located inside the Infiniti were seized without a warrant. Also seized from the vehicle were odor absorbing charcoal foam floor mats, latex gloves, and an insurance card indicating that Durham was a named insured or operator of the Infiniti.

On appeal, Durham argues that the district court erred in denying his motion to suppress because the Government failed to prove that the search of the interior of the Infiniti met the inventory exception or search incident to arrest to the warrant requirement. The Government argues that the $100,000 cash was seized in plain view and the drug test kit was discovered pursuant to an inventory search or a search incident to arrest.

No. 22-20057

## Legal Standard

The Government has the burden of justifying a warrantless search. *United States v. Garcia-Lopez*, 809 F.3d 834, 838 (5th Cir. 2016). In an appeal from the denial of a motion to suppress, this court reviews the district court's legal conclusions *de novo* and its factual determinations for clear error. *Id.* Evidence is viewed in the light most favorable to the prevailing party, and "the clearly erroneous standard is particularly strong" where the district court's ruling is based on live oral testimony. *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (internal quotation marks and citation omitted). "The district court's ruling should be upheld if there is any reasonable view of the evidence to support it." *Garcia-Lopez*, 809 F.3d at 838 (internal quotation marks and citation omitted). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Gomez*, 623 F.3d 265, 268 (5th Cir. 2010) (internal quotation marks and citation omitted). In reviewing the district court's denial of the motion, this court considers "not only evidence introduced during the suppression hearing but also any additional evidence presented during the trial." *United States v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009).

## Discussion

### 1. The $100,000 Cash Plain View Exception

"It is well-established that under certain circumstances the police may *seize* evidence in plain view without a warrant." *Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (internal quotation marks and citation omitted). "The plain view doctrine will justify such a seizure if (1) the officers lawfully entered the area where the items could be plainly viewed; (2) the incriminating nature of the items was immediately apparent; and (3) the officers had a lawful right of access to the items." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). "The incriminating nature of an item is 'immediately apparent' if the

officers have 'probable cause' to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty." *Id.* at 369 (internal quotation marks and citation omitted). "To have probable cause, it is not necessary that the officer know that the discovered res is contraband or evidence of a crime, but only that there be a practical, nontechnical probability that incriminating evidence is involved." *United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016) (internal quotation marks and citations omitted). "When reviewing probable cause determinations, we consider the totality of the circumstances—including the officers' training and experience as well as their knowledge of the situation at hand." *Id.* (internal quotation marks and citations omitted).

Here, Durham and Officer King had discussed the exchange of $100,000 cash for "five kilos." Officer King testified at trial that she visually saw the cash in the bag before Durham was arrested. She further stated that upon meeting with Durham in advance of the deal, he expressed concerns about going back to jail and wanting "to make sure everything was right." When they met, Officer King understood that Durham was uncomfortable with the meeting location due to the presence of security. She further testified that she had 25 years of experience in narcotics, had played an undercover role "[o]ver 100 . . . maybe over 500" times, and that there was an understanding that in this case, "kilo" referred to a kilogram of cocaine. Accordingly, Officer King had sufficient probable cause to believe that the bag of cash was evidence of a crime. *See Turner*, 839 F.3d at 433; *United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992) (noting that "[p]roof of intent to distribute may be inferred from . . . large quantities of cash"). Therefore, the plain view exception applied to the seizure of the $100,000.

No. 22-20057

## 2. The Drug Test Kit

Durham claims that the drug test kit was inadmissible evidence because the Government did not meet its burden to prove a valid inventory search as an exception to the warrant requirement. He argues that during the suppression hearing the Government failed to "elicit any information about the DEA's inventory policy or the reasons it conducted an inventory search," "provided no evidence about what steps its agents took to comply with the inventory policy during the search," "did not address whether the DEA had a policy to address closed containers," and "did not introduce an inventory sheet into evidence."

While the Government concedes that it "did not present testimony regarding the DEA's inventory policy or whether it was followed by agents," it notes that Officer King relayed to her team that she saw the money in the trunk and that she testified at trial that she "visually saw the cash." Thus, the Government claims that when Durham showed Officer King the $100,000 in plain view, that provided her with the probable cause to arrest him for attempting to possess with intent to distribute and search his vehicle based on a reasonable belief that evidence relevant to the crime would be found, creating a lawful search incident to arrest. The Government states that "[s]pecifically, for purpose of this appeal, Officer King saw the $100,000 in cash in plain view prior to giving the bust signal and that the drug test kit was seized pursuant to the search incident to arrest Durham and an inventory search of the vehicle."

In his reply, Durham claims that the Government never raised the search incident to arrest argument before the trial court, and there is no evidence of record to support it. Relying on *Arizona v. Gant*, 556 U.S. 332 (2009), Durham argues that "there is no record evidence that the arresting officers had any belief, reasonable or otherwise, that they would locate

additional contraband or evidence of an attempt to possess cocaine inside the vehicle[,]" especially "in the interior of the Infiniti 50, and in particular, inside a Versace sunglasses case." Durham further argues that the Infiniti had been impounded and was in the control of law enforcement, easily allowing the Government to get a search warrant to search the vehicle.

### a. Inventory Search

"An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996). Inventory searches are an exception to the warrant requirement because they serve "'caretaking' purposes, and because they are not designed to uncover evidence of criminal activity." *United States v. Andrews*, 22 F.3d 1328, 1334 (5th Cir. 1994). Accordingly, "an inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (per curiam) (internal quotation marks and citation omitted).

"[A]n 'inventory search' must not be a ruse for a general rummaging in order to discover incriminating evidence . . ." *Whren*, 517 U.S. at 811 (internal quotation marks and citation omitted). Thus, standardized criteria or established routine must regulate the opening of containers found when conducting an inventory search. *Florida v. Wells*, 495 U.S. 1, 4 (1990). Importantly, "[i]t is beyond serious debate that the prosecution bears the burden of establishing that any evidence submitted, which resulted from an inventory search, was the result of a search conducted in accordance with

known, established police procedures." *United States v. Hope*, 102 F.3d 114, 117 (5th Cir. 1996). "There is no requirement that the prosecution submit evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient . . . as is an officer's unrebutted testimony that he acted in accordance with standard inventory procedures . . ." *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999).

The Government admits that it "did not present testimony regarding the DEA's inventory policy or whether it was followed by agents." The only testimony presented was that of Officer Kedwin Polanco who in response to the Government's question: "There was a search later conducted on the – inventory search of the vehicle?" replied "Yes, sir, it was." There is no testimony referring to DEA guidelines or that they were followed. "The record is devoid of any evidence that standard inventory procedures were in place and were, in fact, followed by the [DEA] when they searched the [Infiniti]." *Hope*, 102 F.3d at 117.

Therefore, it is impossible to determine whether this "inventory search" complied with the DEA's guidelines, and there is no evidence that the inventory exception to the warrant requirement applied.

### b. Search Incident to Arrest

A search incident to a lawful arrest is an exception to the warrant requirement. *Gant*, 556 U.S. at 338. "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* (citation omitted). Accordingly, a search incident to arrest is limited to an arrestee's person and the area "within his immediate control," in other words, "the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 339 (internal quotation marks and citation omitted). "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to

search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Id.* (citation omitted).

The Government admits in its response to Durham's suppression motions that the drug test kit was found after Durham was arrested, pursuant to an inventory search. The presentence report also describes a "vehicle inventory" when discussing the seized "currency, vehicle, and drug test kit . . ." At the suppression hearing, Polanco testified that the vehicle was towed to the DEA office and an "inventory search" was "later conducted." The Government states that "[t]he DEA seized the bag of cash from the trunk, had it processed and counted ($100,000), and towed the Infiniti back to the DEA office."

Certainly, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Gant*, 556 U.S. at 343 (internal quotation marks and citation omitted). However, the Government had no reason to know that the drug transaction would take place in a vehicle and Durham was not driving the vehicle where the cash was found. Furthermore, the Government does not point to any evidence to explain why the officers may have had a reasonable belief that additional evidence of the specific crime for which Durham was arrested would be in Durham's vehicle. While the Government claims that Officer King had a reasonable belief that evidence relevant to the crime would be found, there is no argument beyond this conclusory statement and no evidence of record to show that the exception in *Gant* would apply.

Accordingly, the search of Durham's vehicle that produced the drug test kit was not a valid search incident to arrest because he had already been arrested and taken into custody before the search occurred.

No. 22-20057

### 3. Harmless Error

The $100,000 cash was validly seized pursuant to the plain view exception. The admission of the drug test kit was harmless error because there was sufficient evidence to convict Durham even without the other physical evidence, the drug test kit, found inside the vehicle. The test for harmless error is "whether the trier of fact would have found the defendant guilty beyond a reasonable doubt if the evidence had been suppressed." *United States v. Willingham*, 310 F.3d 367, 372 (5th Cir. 2002) (internal quotation marks, brackets, and citation omitted).

In this case, DEA Agent Johnson testified that the DEA opened an investigation into Durham after receiving a tip from an informant. Through the informant, the DEA arranged for an initial meeting with Officer King with terms already set for a purchase. Officer King testified that Durham initiated contact with her by phone to arrange the purchase. Durham negotiated a deal to purchase "five kilos" in exchange for $100,000, and Officer King testified that there was an understanding that "kilo" referred to a kilogram of cocaine. Officer King testified that Durham repeated to her that he did not want to go back to jail. DEA Agent Johnson testified they surveilled Durham after the initial meeting until Durham performed counter-surveillance maneuvers. Durham met with Officer King at a pre-arranged spot to perfect the exchange, Durham openly showed Officer King the $100,000 cash bargained for in the transaction, and it was lawfully seized in plain view.

Even without the drug test kit evidence found in the Infiniti, the evidence was sufficient to support the conviction for attempt to possess with intent to distribute five kilograms or more of cocaine. *See, e.g.*, *United States v. Armendariz-Mata*, 949 F.2d 151, 154 (5th Cir. 1991) (holding that where the defendant brought cash to meet with undercover agents, negotiated a drug deal, and returned to the pre-arranged spot to perfect the exchange, those

actions constituted a "substantial step in an attempt to possess narcotics"); *United States v. August*, 835 F.2d 76, 77–79 (5th Cir. 1987) (per curiam) (holding that where "cash had been assembled in an agreed and substantial amount, hundreds of miles travelled by a buyer, and contact made with a seller who possessed the drug," the evidence supported a conviction of attempted possession with intent to distribute cocaine). Accordingly, Durham cannot overcome the harmless error standard.

The judgment is AFFIRMED.