BEAM, Circuit Judge.
Erie-Arnaud Benjamin Briere DE L’Isle appeals the district court’s[1] denial *429 of his motion to suppress information discovered by law enforcement after officers seized credit, debit, and gift cards from DE L’Isle’s vehicle and scanned the cards’ magnetic strips. Despite DE L’Isle’s untimely motion to suppress, the district court examined the merits of the motion and concluded that reading the magnetic strip on the back of a credit, debit, or gift card was not a search within the meaning of the Fourth Amendment. For the'reasons discussed below, we affirm.
I. BACKGROUND
On June 20, 2014, Sergeant Michael Vance stopped DE L’Isle for following too closely to a semi-tractor trailer. When the officer approached DE L’Isle’s car, he smelled burnt marijuana and saw air fresheners inside the car. DE L’Isle accompanied Sergeant Vance to his police cruiser where DE L’Isle was given a warning citation for following too closely. Sergeant Vance then deployed his canine, which alerted to the presence of controlled substances inside the vehicle. When Sergeant Vance began searching the vehicle, DE L’Isle approached him and told him he could not search the vehicle. After a brief struggle between DE L’Isle and Sergeant Vance, DE L’Isle was handcuffed and placed into the backseat of the police cruiser.
Sergeant Vance and two other officers completed the search. No narcotics were found, but they seized a large stack of credit, debit, and gift cards located in a duffle bag in the trunk of DE L’Isle’s car. DE L’Isle was subsequently arrested for assault and resisting arrest. United States Secret Service agents then scanned the seized cards and discovered that the magnetic strips on the back of the cards either contained no account information or contained stolen American Express credit card information. Ten of the cards were American Express credit cards with DE L’lsle’s name on the front. The magnetic strips on the back of these ten cards, however, were “empty”; there was no information at all in the. magnetic strips. At least one card, card 23, was a Parker’s PumpPal Club gas debit card, and card 25 was a Quik Trip prepaid card. The magnetic strips on the-back of these cards had account information linked to legitimate American Express credit card accounts. Cards 31 through 47 were American Express gift cards. The magnetic strips on these cards contained credit card information from legitimate American Express customers. Cards 48 through 58 were Visa debit cards, Visa gift cards, and a Master-card. The account information encoded on the magnetic strips of these cards also corresponded to American Express credit accounts. Card 59 was a Subway gift card with American Express credit card information encoded in the magnetic strip. However, none of the American Express account information on any of the cards was DE L’lsle’s. In fact, he had no existing accounts with American Express.
As a result, DE L’lsle was charged with possession of fifteen or more counterfeit and unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(3) and (c)(1)(A)(i). He pled not guilty, and on July 31, 2014, the magistrate judge filed a progression order requiring that pretrial motions be filed on or before August 29, 2014. On October 23, 2014, De L’lsle filed a motion to suppress asking the district court to suppress any evidence discovered when law enforcement scanned the magnetic strips on the seized cards. He argued that the search of the information in the magnetic strips of the cards was done without a warrant or a warrant exception and thus violated his Fourth Amendment right to be free from unreasonable searches. The district court noted that his motion was untimely. However, the court *430 considered the merits of the motion and held that “based on the law,” DE L’lsle’s motion lacked merit.[2] Thus, the district court denied the motion to suppress without a hearing, ultimately holding that “reading the magnetic strip on the back of a credit, debit, or gift card is not a ‘search’ for Fourth Amendment purposes.”
At trial, United States Secret Service Agent Nicholas Wadding testified about credit card theft and identity theft. He explained that nearly all plastic cards have three tracks, or lines, of information on the magnetic strip. The first line has the account number, the second line has the credit card holder’s name, and the third line, which is discretionary, may have a frequent flier number or some specific identifier.[3] According to Peter Grimm, an American Express fraud investigator, the magnetic strip also generally contains the card’s expiration date. The information contained in the magnetic strip should match the information on the front of the card. A card is said to be “re-encoded” when the magnetic strip information is rewritten.
The ten American Express cards confiscated from De L’lsle’s vehicle all had his name on the front of the cards with different account numbers, but the cards had no information on the magnetic strips. Grimm testified that it is significant that a card has a blank magnetic strip because that means it is counterfeit. All American Express cards are issued with account information contained in the magnetic strip. It is also significant that the magnetic strips on the Parker’s PumpPal Club gas debit card, Quik Trip prepaid card, American Express gift cards, Visa debit and gift cards, Mastercard debit card, and Subway gift card all contained legitimate American Express customer account information. American Express would never encode credit card holder information on the back of these types of cards. If a gift card has been re-encoded with account information that was not originally there, it is a counterfeit card. DE L’Isle testified that he bought the cards from an unknown person and believed they were legitimate. On October 29, 2014, the jury returned a guilty verdict, .and DE L’Isle was sentenced to fifteen months in prison and three years of supervised release. He was also ordered to pay over $4,700 in restitution and over $12,700 in court costs.
DE L’Isle now appeals the district court’s denial of his motion to suppress. He does not challenge the traffic stop or the seizure of the cards. DE L’Isle disputes only the district court’s narrow holding that he had no Fourth Amendment privacy interest in the information contained in the magnetic strips on the credit, debit, and gift cards seized from his vehicle.
II. DISCUSSION
When reviewing a district court’s denial of a motion to suppress, “this [c]ourt reviews factual findings for clear error, and questions of constitutional law de novo.” United States v. Smith, 715 F.3d 1110, 1114 (8th Cir. 2013) (quoting United States v. Hollins, 685 F.3d 703, 705 (8th *431 Cir. 2012)). In regard to factual determinations, this court “give[s] ‘due weight’ to the inferences of the district court and law enforcement officials.” United States v. Robbins, 682 F.3d 1111, 1115 (8th Cir. 2012) (quoting United States v. Replogle, 301 F.3d 937, 938 (8th Cir. 2002)). Also, “[w]e may affirm the district court’s denial of a motion to suppress on any ground the record supports.” United States v. Anderson, 688 F.3d 339, 343 (8th Cir. 2012) (quoting United States v. Pratt, 355 F.3d 1119, 1121 (8th Cir. 2004)).
DE L’Isle argues that reading the magnetic strips on the back of the cards was a search in violation of his Fourth Amendment rights because the strip contains information about the account. According to DE L’Isle, this is the type of information that the Supreme Court would consider a legitimate privacy interest. Given the facts of this case, we disagree.
The Fourth Amendment gives people the right “to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const, amend. IV. “[T]he ultimate touchstone of the Fourth Amendment is ‘reasonableness.’ ” Riley v. California, — U.S.-, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)), cert. denied, Riley v. California, — U.S. -, 136 S.Ct. 506, 193 L.Ed.2d 401 (2015). A search is reasonable if the officer has a valid search warrant or if the search fits within a specific warrant exception. Id. It is clear that a physical intrusion or trespass by a government official constitutes a search within the meaning of the Fourth Amendment. United States v. Jones, — U.S. -, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012). However, “a violation [can also] occur[] when government officers violate a person’s ‘reasonable expectation of privacy.’” Id. at 950 (quoting Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). For this type of violation, the claimant must show both “an actual (subjective) expectation of privacy, and ... that the expectation [is] one that society is prepared to recognize as ‘reasonable.’” Katz, 389 U.S. at 361, 88 S.Ct. 507. Thus, “[o]fficial conduct that does not ‘compromise any legitimate interest in privacy’ is not a search subject to the Fourth Amendment.” Illinois v. Caballes, 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (quoting United States v. Jacobsen, 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).
First, scanning the magnetic strips on the cards was not a physical intrusion into a protected area prohibited by the Fourth Amendment. See Florida v. Jardines, — U.S.-, 133 S.Ct. 1409, 1417, 185 L.Ed.2d 495 (2013). The magnetic strip on the back of a debit or credit card is a type of “external electronic storage device, [that] is designed simply to record the same information that is embossed on the front of the card.” United States v. Medina, No. 09-20717-CR, 2009 WL 3669636, at *10 (S.D. Fla. 2009). Accordingly, the information embossed on the front of the card and recorded in the magnetic strip will only be different if the card has been tampered with. Id. Credit card readers reveal whether the information in the magnetic strip on the back of the card matches the information on the front.- Id. The process of using a credit card reader “is analogous to using an ultraviolet light to detect whether a treasury bill is authentic, ... [which is not a] ... ‘search.’ ” Id. Thus, because “sliding a card through a scanner to read virtual data does not involve physically invading a person’s” space or property, there was no Fourth Amendment viola *432 tion under the original trespass theory of the Fourth Amendment. United States v. Alabi, 943 F.Supp.2d 1201, 1265 (D.N.M. 2013).
Second, DE L’lsle failed to show that he had a reasonable expectation of privacy under Katz, which requires a showing of both a subjective expectation of privacy and an objective expectation of privacy that society recognizes as reasonable. Katz, 389 U.S. at 361, 88 S.Ct. 507. Although DE L’lsle claims he had an actual, subjective privacy interest in the cards, he is unable to make that case.[4] As to the ten American Express credit cards, he could not have had an expectation of privacy simply because his name was embossed on the front of the cards. He also could not have had a subjective expectation of privacy in any of the other cards because the purpose of a credit, debit, or gift card is to enable the holder of the card to make purchases, and to accomplish this, the holder must transfer information from the card to the seller, which negates an expressed privacy interest. Medina, 2009 WL 3669636, at *11. Information is transferred to the seller “by manually inputting the information on the front of the card or swiping the card through a machine that reads the magnetic strip on the back.” Id. When the holder uses the card he “knowingly disclosefs] the information on the , magnetic strip of his credit card to a third party and cannot claim a reasonable expectation of privacy in it.” Id.
Even if DE L’lsle had an actual, subjective expectation of privacy in the information found in the magnetic strips on the cards, this alleged privacy interest is not one society is prepared to endorse. In the normal course, all of the information found in the magnetic strips on American Express credit cards is identical to the information in plain view on the front of the cards. “Society is not prepared to recognize as legitimate an asserted privacy interest in information in plain view that any member of the public may see.” Alabi, 943 F.Supp.2d at 1276. Even less convincing is the situation in this case where the magnetic strips on the American Express credit cards were empty. If society does not recognize a privacy interest in readily visible information, DE L’lsle certainly cannot assert a privacy interest in information that is nonexistent.
When the information contained in the magnetic strip differs from the information on the front of the card, there is another possible issue that diminishes DE L’lsle’s purported privacy interest. According to Agent Wadding, the only reason a person re-encodes the magnetic strip on the back of a card is to “mask that they have a card number.” Society is even less likely to recognize as reasonable DE LTsle’s “subjective expectation of privacy *433 in the information stored on [the] credit and debit cards’ magnetic strips [when] the evidence shows [that it] would only be different from the information embossed on the outside of the card if the intent is to engage in a crime.” Id. at 1287. American Express credit cards with no information in the magnetic strips, and debit and gift cards that have been re-encoded with new information in the magnetic strips, are counterfeit cards. The evidence strongly suggests that DE L’lsle intended to engage in credit card fraud and identity theft. “[G]overnmental conduct that only reveals the possession of contraband ’compromises no legitimate privacy interest.’” Caballes, 543 U.S. at 408, 125 S.Ct. 834 (quoting Jacobsen, 466 U.S. at 123, 104 S.Ct. 1652). Thus, because scanning the magnetic strips on the cards was the government’s way of revealing DE L’lsle’s possession of contraband, the counterfeit cards, there was no violation of a legitimate privacy interest and accordingly, no search within the meaning of the Fourth Amendment.
There may be an instance, with facts different from this case, where a court reasonably finds a legitimate privacy interest in information contained in the magnetic strip of a credit, debit, or gift card. In such a case, a motion to suppress may well be proper to further explicate the nature and character of privacy interests, if any, that may reside within the confines of these magnetic strips. However, here, where all of the information in the magnetic strip should have been identical to the information in plain view on the front of the card, and where the cards were lawfully possessed by law enforcement officers and established to be counterfeit, we cannot conclude that DE L’lsle had a privacy interest warranting further investigation into potential Fourth Amendment protections.
III. CONCLUSION
The judgment of the district court is affirmed.

. The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

. Pursuant to Federal Rule of Criminal Procedure 12(c)(1), the magistrate judge issued a progression order requiring all pretrial motions be filed on or before August 29, 2014. DE L'Isle did not file his motion to suppress until October 23, 2014. Thus, the district court would not have abused its discretion if it had denied the motion solely on the basis of untimeliness. United States v. Salgado-Campos, 442 F.3d 684, 686 (8th Cir. 2006) ("If a party fails to file a pretrial motion before that deadline, the party waives that issue.”).

. Here, none of the cards in question had any information in the third discretionary line of the magnetic strip.

. The dissent in its footnote 7, citing a very small portion of the district court's footnote 2, apparently seeks to formulate a case-wide factual dispute sufficient to convert this appeal into a quest for an advisory opinion dealing with a laundry list of issues barely, if at all, in dispute. The operative language leading into the district court’s footnote is as follows: "[E]ven assuming that the defendant could show a subjective expectation of privacy in the magnetically-encoded information on the cards — that expectation is not one that society is prepared to accept as legitimate.” While the validity, or not, of a defendant's subjective expectation of privacy may be a question of fact, whether such expectation is one that society is prepared to reasonably accept as legitimate is a question of law. United States v. Douglas, 744 F.3d 1065, 1069 (8th Cir. 2014).
The district court unequivocally said it was not a reasonable, legitimate expectancy. Accordingly, no question of fact survives in support of the dissent’s quest for an advisory opinion on the numerous listed issues.