## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-50788

————

United States Court of Appeals
Fifth Circuit

**FILED**

October 13, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COURTLAND LENARD TURNER,

Defendant - Appellant

————

Appeal from the United States District Court
for the Western District of Texas

————

Before WIENER, CLEMENT, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

The central issue in this case is whether a law enforcement officer's scanning of the magnetic stripe on the back of a gift card is a search within the meaning of the Fourth Amendment. We join two other circuits in holding that it is not.

I.

Defendant Courtland Turner was riding in a car driven by Roderick Henderson that was pulled over for lacking a visible license plate light. Henderson failed to show the officer a valid driver's license, providing him instead with a Texas identification card. Turner likewise provided the officer with an identification card.

No. 15-50788

The officer retreated to his patrol car to conduct a records check and verify Turner's and Henderson's identities. In doing so, he discovered that Turner had an active arrest warrant for possession of marijuana. As a result, the officer asked Turner to exit the vehicle; he complied. As Turner exited the vehicle, the officer observed an opaque plastic bag partially protruding from the front passenger seat. It appeared to the officer that someone attempted to conceal the bag by pushing it under the seat.

After placing Turner in the patrol car while dispatch confirmed the warrant, the officer asked Henderson what was inside the bag. Henderson handed the officer the bag and said that "we"—apparently referring to Turner and himself—purchased gift cards. The officer opened the bag and saw approximately 100 gift cards. He then asked Henderson whether he had any receipts for the gift cards. Henderson responded that he did not and that "we" bought the gift cards from another individual who sells them to make money.

After conferring with other officers about past experiences with stolen gift cards, the officer seized the gift cards as evidence of suspected criminal activity. Henderson was ticketed for failing to display a driver's license and signed an inventory sheet that had an entry for 143 gift cards. Turner was arrested pursuant to his warrant.

The officer, without obtaining a search warrant, swiped the gift cards with his in-car computer. Unable to make use of the information shown, the officer turned the gift cards over to the Secret Service. A subsequent scan of the gift cards revealed that at least forty-three were altered, meaning the numbers encoded in the card did not match the numbers printed on the card. The investigating officer also contacted the stores where the gift cards were purchased—a grocery store and a Walmart in Bryan, Texas. The stores provided photos of Henderson and Turner purchasing gift cards.

2

No. 15-50788

Turner was charged with aiding and abetting the possession of unauthorized access devices. He moved to suppress evidence of the gift cards, challenging both the roadside seizure of the cards and the subsequent examination of the magnetic stripes. The district court denied Turner's motion, finding that, although Turner had standing to seek suppression, there was no constitutional violation because (1) Henderson provided consent for the seizure of the gift cards and (2) the later examination of the cards did not constitute a search. Turner entered a conditional guilty plea, reserving his right to appeal the suppression ruling.

## II.

"When examining a district court's ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error." *United States v. Hearn,* 563 F.3d 95, 101 (5th Cir. 2009). We view the evidence in the light most favorable to the prevailing party, *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002), and may "affirm the district court's ruling . . . based on any rationale supported by the record." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

As the party seeking suppression, Turner "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 131 n.1, 133–34 (1978)). That burden includes establishing standing to contest the evidence, *United States v. Iraheta*, 764 F.3d 455, 460–61 (5th Cir. 2014), and showing that the challenged government conduct constitutes a Fourth Amendment search or seizure. *Smith*, 978 F.2d at 176.

## III.

We agree with the district court that Turner may challenge the seizure of the gift cards. He jointly possessed the cards with Henderson, and the bag

3

containing them was found underneath where he was sitting. *See Iraheta*, 764 F.3d at 461–62 (explaining that passengers of a vehicle have standing to challenge seizure of their luggage); *United States v. Miller*, 608 F.2d 1089, 1101 (5th Cir. 1979) (treating a plastic portfolio as personal luggage subject to Fourth Amendment search requirements).[1]

Turner agrees that by handing the bag to the officer in response to his question about its contents, Henderson consented to the officer's initial seizure of, and look inside, the bag. But he disagrees with the district court's conclusion that Henderson's consent extended to the officer's taking permanent possession of the gift cards. We need not resolve this dispute over the scope of Henderson's consent, because we find another lawful basis for the seizure of the gift cards.

The taking of physical items like gift cards is a seizure that requires either a warrant or some other justification that renders such an intrusion reasonable under the Fourth Amendment. *See United States v. Paige*, 136 F.3d 1012, 1022 (5th Cir. 1998). One situation in which a warrant may not be required occurs when police "seize evidence in plain view." *Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (emphasis omitted) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)). For a plain-view seizure to be lawful, the officer must have had lawful authority to be in the location from which he viewed the evidence, and the incriminating nature of the item must be "immediately apparent." *Horton v. California*, 496 U.S. 128, 136 (1990) (quoting *Coolidge*, 403 U.S. at 466). As the officer obviously had authority to be standing on the side of the road when he observed the gift cards (the lawful authority requirement typically arises when the police observe the item while

---

[1] The government challenges Turner's "standing" to contest only what it views as Henderson's consent to the seizure of the gift cards. As we find the seizure lawful under the plain-view exception rather than as a matter of consent, we need not decide this question.

inside a home), Turner contests only whether it was immediately apparent that the cards were instrumentalities of a crime.

"The incriminating nature of an item is immediately apparent if the officers have probable cause to believe that the item is either evidence of a crime or contraband." *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1996). To have probable cause, "it is not necessary that the officer know that the discovered res *is* contraband or evidence of a crime, but only that there be 'a "practical, nontechnical" probability that incriminating evidence is involved.'" *United States v. Espinoza*, 826 F.2d 317, 319 (5th Cir. 1987) (quoting *Texas v. Brown*, 460 U.S. 730, 742–43 (1983)). When reviewing probable cause determinations, we "consider the totality of the circumstances—including the officers' training and experience as well as their knowledge of the situation at hand." *Buchanan,* 70 F.3d at 826.

The circumstances here were as follows: the plastic bag contained approximately 100 gift cards and appeared to have been concealed under the front passenger seat. Henderson admitted not having receipts for the gift cards and further stated that he and Turner purchased the gift cards from an individual who sells them for a profit. The officer, upon learning this, conferred with other officers who had experience with large numbers of gift cards being associated with drug dealing, fraud, and theft. We conclude that these facts support probable cause to believe the gift cards were contraband or evidence of a crime. *See United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (describing probable cause as a "fair probability" that a crime occurred, which is "more than a 'bare suspicion' but less than a preponderance of the evidence" (quoting *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999))).

Turner counters that a finding of probable cause is at odds with the officer's view that during the stop there was insufficient evidence to arrest Henderson for a gift card crime. This does not control our inquiry for a couple

reasons. The existence of probable cause is an objective one that does not turn on the subjective beliefs of an officer. And even if the officer's view was a reasonable assessment of the evidence, he could seize the gift cards so long as there was probable cause to believe they were evidence of a crime, even if that crime could not yet be tied to a particular suspect.

## IV.

Having concluded that the gift cards were lawfully seized, we must decide whether it was lawful for law enforcement to scan the magnetic stripes on the cards to see the information encoded therein.

Once seized, most items do not give rise to a separate Fourth Amendment search inquiry. Think of a firearm or a marijuana plant. The evidentiary value of those items is the object itself, so seizing them is all law enforcement needs to do. Some items, however, conceal other items. Even when law enforcement lawfully seizes a suitcase, for example, it still needs a warrant (or some other recognized justification) to open it. *United States v. Place*, 462 U.S. 696, 699–700 (1983). That is because, in addition to the Fourth Amendment possessory interest a person has in a suitcase, there is an additional Fourth Amendment privacy interest in its contents.

When it comes to technology that allows law enforcement to obtain information embedded in an item, it can be more difficult to determine whether there is a separate privacy interest located within an item that already enjoys constitutional protection from unlawful seizure. Such a privacy interest exists in the electronic contents of computers and cell phones. *See Riley v. California*, 134 S. Ct. 2473, 2485 (2014).[2] Yet, other applications of technology that reveal

---

[2] There was no dispute in *Riley* that reviewing the contents of a cell phone involved a search. At issue was only whether such a search was permissible without a warrant when conducted during an arrest. *Riley*, 134 S. Ct. at 2493 (holding that search-incident-to-arrest doctrine does not extend to search of cell phone).

No. 15-50788

information not visible to the naked eye—for example, using a special light to detect ultraviolet ink on currency or examining the metadata located within an electronic image already in the lawful possession of the government—have not been thought to constitute a search. *See United States v. Post*, 997 F. Supp. 2d 602, 606 (S.D. Tex. 2014); *United States v. Medina*, No. 09-20717-CR, 2009 WL 3669636, at *10 (S.D. Fla. Oct. 24, 2009), *report and recommendation adopted in part, rejected in part sub nom. United States v. Duarte*, No. 09-20717-CR, 2009 WL 3669537 (S.D. Fla. Nov. 4, 2009). What about the information encoded in the magnetic stripe[3] on the back of gift cards?

A Fourth Amendment privacy interest is infringed when the government physically intrudes on a constitutionally protected area or when the government violates a person's "reasonable expectation of privacy." *United States v. Jones*, 132 S. Ct. 945, 949–50 (2012). Although technology can sometimes involve the former, *see id.* at 949 (finding that placement of a GPS tracking device on a car amounted to an unlawful trespass), it more often involves the latter. Indeed, the "reasonable expectation of privacy" approach arose from wiretapping. *See Katz v. United States*, 389 U.S. 347 (1967).

Turner argues that scanning the gift cards amounted to a search under the "reasonable expectation of privacy" inquiry. That requires "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 361 (Harlan, J., concurring). The reasonableness of an expectation of privacy turns on "our 'societal understanding' about what deserves 'protection from government invasion.'"

---

[3] Some courts have referred to magnetic stripes as "magnetic strips." The technical term is magnetic stripe. *See Magnetic Stripe Technology*, IBM, http://www-03.ibm.com/ibm/history/ibm100/us/en/icons/magnetic/ (last visited Oct. 5, 2016) ("The magnetic stripe . . . was the catalyst that accelerated the proliferation of the global credit card industry, which now handles US$6 trillion in transactions per year.").

*Smith*, 978 F.2d at 177 (quoting *Oliver v. United States*, 466 U.S. 170, 178 (1984)).  Analogizing to the cell phones the Supreme Court discussed in *Riley*, Turner contends that society recognizes as reasonable an expectation of privacy in a gift card's magnetic stripe because it is an electronic storage device that contains personal information.

At this point, it is helpful to describe the electronic information encoded in the typical gift card.  The record lacks much detail about this, a deficiency that hurts Turner as he bears the burden of establishing a privacy interest.  Useful information can be found, however, in other cases addressing whether scanning credit or gift cards amounts to a search.  One such court has explained that the typical magnetic stripe has "three data strips which hold only 79 alphanumeric characters, 40 numeric characters, and 107 numeric characters, respectively."  *See United States v. Bah*, 794 F.3d 617, 633 (6th Cir. 2015).  For credit cards, most of which have more information than a gift card, that limited space usually contains the "account number, a bank identification number, the card's expiration date, a three digit 'CSC' code, and, at times, the cardholder's first and last name."  *Id.* at 630.  Of course, it is the issuing institution, not card users, that initially codes and stores this information on the magnetic stripe.  *See United States v. Alabi*, 943 F. Supp. 2d 1201, 1279 (D. N.M. 2013).  Users do have the ability to re-encode the cards,[4] but need an uncommon device to do so.[5]  *See id.* at 1284.  The time and expense it takes to purchase and use a re-encoding device to change at most a few lines of

---

[4] At least for credit cards, some user agreements prohibit tampering with cards.  *See Alabi*, 943 F. Supp. 2d at 1215–16; *HSBC Credit Card Agreement Terms*, HSBC BANK, http://www.hsbc.co.uk/1/PA_esf-ca-app-content/content/pws/content/personal/pdfs/hsbc-bank-credit-card-tcs.pdf (last visited Sept. 29, 2016).

[5] *See Deftun MSR606 HiCo Magnetic Stripe Card Reader Writer Encoder*, AMAZON.COM, https://www.amazon.com/Deftun-MSR606-Magnetic-Stripe-Encoder/dp/B006RE896K (last visited Oct. 5, 2016) (listing price at $299.99).

No. 15-50788

characters means it will rarely be worth doing for a lawful purpose. *Id.* at 1284–85; *Bah*, 794 F.3d at 632; *United States v. DE L'Isle*, 825 F.3d 426, 432–33 (8th Cir. 2016). The incentive to re-encode exists, however, when a fraudster changes the account number encoded in a gift card to match one with a higher balance than the card he purchased or counterfeited. *See Alabi*, 943 F. Supp. 2d at 1284–85.

A number of these features lead us to conclude that there is no reasonable expectation of privacy in the magnetic stripe of a gift card. For starters, the few lines of characters encoded in a gift card are infinitesimally smaller than the "immense storage capacity" of cell phones or computers. *Riley*, 134 S. Ct. at 2489. The Supreme Court described that capacity as "[o]ne of the most notable distinguishing features of modern cell phones" that had "several interrelated consequences for privacy," including that "a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record." *Id.*

Even more important is that the vast gulf in storage capacity between gift cards and cell phones reflects their different purposes. A primary purpose of modern cell phones, and certainly of computers, is to store personal information. *See id.* at 2489–91. The purpose of a gift card is to buy something. *See Alabi*, 943 F. Supp. 2d at 1279. The issuer of a gift card places the information on it, which can only be altered using a device that few Americans know about and even fewer own. As one court has put it, "[r]ather than using credit and debit cards to manipulate and store the data contained in the cards' magnetic strips, individuals and society put to use the magnetic strips by using the data that the issuer encoded on them . . . to facilitate a financial transaction and purchase goods and services." *Id.* at 1284.

No. 15-50788

Another Fourth Amendment consequence flows from the commercial purpose of gift cards. Unlike cell phones and computers, whose function of storing personal information often results in access being restricted by a password, the raison d'être of gift cards means that third party cashiers will often be doing the same swiping that law enforcement did here. *DE L'Isle*, 825 F.3d at 430 ("[T]he purpose of a . . . gift card is to enable the holder of the card to make purchases, and to accomplish this, the holder must transfer information from the card to the seller, which negates an expressed privacy interest."); *Bah*, 794 F.3d at 633 ("A credit card's stored information . . . is *intended* to be read by third parties. That is the *only* reason for its existence." (second emphasis added) (quoting *United States v. Benjamin*, No. 4:14-CR-3089, 2014 WL 5431349, at \*11 (D. Neb. Oct. 24, 2014))); *see generally Smith v. Maryland,* 442 U.S. 735 (1979) (discussing the third party doctrine); *United States v. Miller*, 425 U.S. 435 (1976) (same).

We thus join the other courts that have considered this issue and conclude that society does not recognize as reasonable an expectation of privacy in the information encoded in a gift card's magnetic stripe. *See Bah*, 794 F.3d at 631; *DE L'Isle*, 825 F.3d at 432; *Alabi*, 943 F. Supp. 2d at 1285; *Medina*, 2009 WL 3669636, at \*11.

The most recent of those cases, *DE L'Isle*, included a dissent. *See* 825 F.3d at 433–37 (Kelly, J., dissenting). Judge Kelly's dissent does not actually conclude that scanning a credit card amounts to a search, but instead would have remanded for additional factfinding "on whether there are significant technological barriers to an individual rewriting information on the magnetic stripe of their cards." *Id*. at 434. Given that our circuit places the burden on the defendant to establish a reasonable expectation of privacy in the item police examined, *see Smith*, 978 F.2d at 176, Turner should have introduced at the suppression hearing any information about the technology that would have

10

helped him meet his burden.  In addition, the *DE L'Isle* dissent's concern about credit cards containing new chip technology that has "a storage capacity much greater than that of the old magnetic stripes," *DE L'Isle*, 825 F.3d at 436, does not yet apply to gift cards.[6]

The technology of today will not, however, be the technology of tomorrow. The Supreme Court has noted the need to take account of rapidly evolving capabilities when applying the Fourth Amendment to other Information Age technologies.  *See Kyllo v. United States*, 533 U.S. 27, 33–34 (2001) ("It would be foolish to contend that the degree of privacy secured to citizens by the Fourth Amendment has been entirely unaffected by the advance of technology . . . . The question we confront today is what limits there are upon this power of technology to shrink the realm of guaranteed privacy."); *Riley,* 134 S. Ct. at 2494–95 ("Modern cell phones . . . [w]ith all they contain and all they may reveal, [] hold for many Americans 'the privacies of life' . . . . The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought.").  As other courts deciding this issue have, we thus limit our holding to the gift cards of today, which are not intended to be used for—and rarely are used for—storing information entered by the user.  *See Bah*, 794 F.3d at 633 ("Our holding today is limited in scope . . . we do not address hypothetical magnetic strips of the future that may have greater storage capacity and tend to store more private information."); *DE L'Isle*, 825 F.3d at 433 ("There may be an instance, with facts different from this case, where a court reasonably finds a legitimate privacy interest in information contained

---

[6] Another difference between gift cards and credit cards is that the magnetic stripes on the latter typically contain identifying information like the cardholder's name and address.  *See Bah*, 794 F.3d at 630.  Despite that feature, courts have unanimously rejected the argument that the swiping even of credit cards is a Fourth Amendment search.

No. 15-50788

in the magnetic strip of a credit, debit, or gift card.").  And even with the gift cards of today, law enforcement can view the encoded information only after coming into lawful possession of the cards.

* * *

The judgment of the district court is AFFIRMED.