# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40701

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2017

Lyle W. Cayce
Clerk

Consolidated with: 16-40702

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

WILLIAM CHANCE WALLACE,

> Defendant - Appellant

———————————————

Appeals from the United States District Court
for the Southern District of Texas

———————————————

Before JONES, CLEMENT, and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

William Chance Wallace is a confirmed member of Tango Blast, a Texas crime syndicate. As of 2015, Wallace had been convicted of five violent felonies: one count of possession of a controlled substance with intent to distribute, two counts of aggravated assault with a deadly weapon, one count of possession of a controlled substance, and one count of unlawful delivery of a controlled substance. Wallace violated his probation for the unlawful delivery charge and a warrant was issued for his arrest on January 15, 2015. In two separate cases, Wallace was charged with and pleaded guilty to: (1) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); and

Nos. 16-40701 & 16-40702

(2) aiding and abetting retaliation against a witness in a criminal investigation, in violation of 18 U.S.C. § 1512(b) and 18 U.S.C. § 2. In this consolidated appeal, we are called on to decide whether the district court erred in denying Wallace's motion to suppress. Because we conclude that it did not, we AFFIRM in part and DISMISS in part as MOOT. In doing so, we expressly overrule a line of cases coming out of the Southern District of Texas. *In re Order Authorizing Prospective and Continuous Release of Cell Site Location*, 31 F. Supp. 3d 889, 891-900 (S.D. Tex. 2014); In *re App. for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 756-65 (S.D. Tex. 2005).

## I.

### A. Firearm Case

In May 2015, a confidential informant approached Shawn Hallett, a Special Agent with the Texas Department of Safety ("DPS"). The informant gave Wallace's phone number to Hallett and informed him that Wallace was a gang member and a wanted fugitive living in Austin. When Hallett verified this information, he discovered an outstanding arrest warrant. He then passed this information to DPS's gang unit in Austin.

DPS Agent Jose Rodriguez (with the help of an assistant district attorney) then sought a Ping Order for authorization under both federal and state law to (among other things) obtain the "locations of cell site towers being accessed by" the cellular device linked to the number given by the confidential informant. This information is referred to as "E911" or prospective cell site data. A state district court judge granted the requested Ping Order for a period of sixty days going forward. As a result, DPS discovered that Wallace's phone had been turned off.

Hallett reached out to his confidential informant and received a new telephone number for Wallace within a few days. Rodriguez then applied for

2

Nos. 16-40701 & 16-40702

and was granted a second Ping Order for this new cell phone number. With this Ping Order, DPS obtained the approximate, real-time GPS location of Wallace's cell phone from AT&T. Using this information, Hallett located Wallace near a pond on private property off U.S. Highway 87 north of Victoria, Texas. Officers arrested Wallace, discovering a Winchester Super X .22 magnum caliber round of ammunition in his pocket, a black Bersa Thunder .380 semi-automatic pistol at the edge of the pond, and a box of ammunition for that pistol along with an empty holster in Wallace's truck. Wallace was charged with being a felon in possession of a firearm.

Once charged, Wallace moved to suppress the evidence obtained during the execution of the arrest warrant, including the pistol, ammunition, and relevant testimony. He argued that the Ping Order used to locate him was invalid because "1) the information provided to the State District Judge was ambiguous, overbroad and conclusory and 2) law enforcement was not engaged in an 'ongoing criminal investigation' of the Defendant." He also argued that the statutes authorizing the Ping Order were unconstitutional. The district court denied Wallace's motion, finding that suppression was not a cognizable statutory remedy under Fifth Circuit precedent. The district court also upheld the statutes as constitutional. Wallace timely appealed.[1]

### B. Aiding and Abetting Charge

Approximately five months after Wallace was indicted for the firearms charge, Wallace and two accomplices posted a photograph of the firearms complaint and revealed the individual they believed to be the "snitch." As a result, that individual, who may or may not have been the actual confidential informant, was threatened. Wallace was charged with and pleaded guilty to

---

[1] Wallace's plea agreement preserved his right to appeal the district court's suppression ruling.

3

Nos. 16-40701 & 16-40702

aiding and abetting retaliation against a witness in a federal investigation, a violation of 18 U.S.C. § 1513(b) and 18 U.S.C. § 2. Pursuant to his plea agreement, Wallace waived his right to appeal his conviction and sentence for any reason other than ineffective assistance of counsel.

## *C. Sentencing*

The cases were consolidated for sentencing. The district court sentenced Wallace to two concurrent 180-month sentences, followed by three years of supervised release. At the sentencing hearing, Wallace's attorney noted that the Guidelines range for the aiding and abetting charge would have been much lower had Wallace not been classified an armed career criminal, a threshold he would not have reached if he not been convicted on the firearms charge. Wallace therefore requested—and the district court agreed—to reconsider his sentence should the firearms conviction be overturned on appeal.

## **II.**

"When examining a district court's ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error." *United States v. Turner*, 839 F.3d 429, 432 (5th Cir. 2016) (quoting *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009)). The evidence is viewed "in the light most favorable to the prevailing party." *Id.* We may "affirm the district court's ruling on a motion to suppress based on any rationale supported by the record." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

The party seeking suppression "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 131 n.1, 133-34 (1978)).

Nos. 16-40701 & 16-40702

## III.

Wallace maintains that the district court erred in denying his motion to suppress because "[t]he Government failed to show that it sought an order to find information relevant to an *ongoing criminal investigation*" as required by the federal pen-trap statute and the Texas Code of Criminal Procedure. Wallace concedes that the Ping Order was issued pursuant to a valid arrest warrant for violating the conditions of his probation, but he argues that the plain meaning of the phrase "ongoing criminal investigation" implies "new criminal activity" and does not encompass "technical violations of . . . probation" or "conduct other than new crime." Neither the relevant statutes nor binding precedent define the term "ongoing criminal investigation."

But Wallace's ultimate problem is that suppression is not a remedy for a violation of either the federal pen-trap statute or the Texas Code of Criminal Procedure. *United States v. German*, 486 F.3d 849, 654 (5th Cir. 2007) (holding that suppression is not a remedy for a violation of the federal pen-trap statute); *see also United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014).[2] "Where Congress has both established a right and provided exclusive remedies for its violation, we would encroach upon the prerogatives of Congress were we to authorize a remedy not provided for by the statute." *German*, 486 F.3d at 853 (alteration omitted) (quoting *United States v. Frazin*, 780 F.2d 1461, 1466 (9th Cir. 1986)). Unlike the wire-tap statute which "specifically provides for an exclusionary remedy when the statutory requirements are not met," the pen-

---

[2] DPS also sought the Ping Order pursuant to § 2703(d) of the federal Stored Communications Act (SCA). Like the federal pen-trap statute and the parallel state provision, the SCA requires the government to show that the "information sought, [is] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Wallace does not argue that the government failed to comply with the requirements of the SCA. Even if he did, we have held that suppression is not a remedy for violations of the SCA. *Guerrero*, 768 F.3d at 358.

trap statute provides only for fines and imprisonment for knowing violations. *Id.* at 842. Accordingly, it is clear that "Congress has determined that the benefits of an exclusionary rule do not outweigh its substantial social costs." *Id.*

The same is true with respect to the parallel state statute in Article 18.21 of the Texas Code of Criminal Procedure. It specifically states that the "remedies and sanctions described" therein—namely "injunctive relief," "a reasonable attorney's fee and other litigation costs," and "actual damages"— "are the exclusive judicial remedies and sanctions for a violation of this article." Tex. Code. Crim. Proc. art. 18.21, §§ 12-13. Suppression is not an available recourse. As such, even if the Ping Order were issued in violation of federal or state law, Wallace is not entitled to suppression. The district court did not err.

**IV.**

Alternatively, Wallace argues that the district court should have granted his motion to suppress because the government violated his Fourth Amendment rights when it accessed his phone's E911 location information— or prospective cell site data—pursuant to a court order supported by "specific and articulable facts" rather than a warrant supported by probable cause. Ordinarily, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure. This prohibition applies as well to the fruits of the illegally seized evidence." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (internal citations omitted). "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring)). Whether obtaining prospective cell site data constitutes a search within the meaning of the Fourth Amendment is still an open question in this Circuit.

Nos. 16-40701 & 16-40702

The Sixth Circuit—the only appellate court to address the subject so far—held that obtaining prospective cell site data is not a search. *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012). The Sixth Circuit reasoned that when an individual "voluntarily use[s]" a cellular device, he has no "reasonable expectation of privacy in the GPS data and location of his cell phone." *Id.* at 781. "When criminals use modern technological devices to carry out criminal acts and to reduce the possibility of detection, they can hardly complain when the police take advantage of the inherent characteristics of those very devices to catch them." *Id.* at 774. A number of district courts have reached a similar conclusion. *See, e.g.*, *United States v. Booker*, No. 1:11-CR-255-1-TWT, 2013 WL 2903562, at *4 (N.D. Ga. June 13, 2013). Other courts have disagreed. *See, e.g., In re U.S. for an Order Authorizing the Release of Prospective Cell Site Info.*, 407 F. Supp. 2d 134, 135 (D.D.C. 2006).

We have already grappled with the constitutionality of judicial orders based on less than probable cause authorizing government access to *historical* cell site data. *In re U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013) (hereinafter *Historical Cell Site Data*). In *Historical Cell Site Data*, the government filed three applications under § 2703(d) of the SCA requesting a court order to compel a cell phone service provider "to produce sixty days of historical cell site data" for certain cell phone numbers, revealing "the antenna tower and sector to which the cell phone sends its signal." *Id.* at 602. The magistrate judge denied each of the government's applications and held that "warrantless disclosure of cell site data violates the Fourth Amendment." *In re U.S. for Historical Cell Site Data*, 747 F. Supp. 2d 827, 846 (2013).

We reversed, concluding that the "question of *who* is recording an individual's information initially is key." *Historical Cell Site Data*, 724 F.3d at 610. "[W]hether an intrusion constitutes a search" depends "on whether it is the Government collecting the information or requiring a third party to collect

7

and store it, or whether it is a third party, of its own accord and for its own purposes recording the information." *Id.* When a "third party collects information in the first instance for its own purposes," the information constitutes a business record. *Id.* Applying this framework, we concluded that:

> cell site information is clearly a business record. The cell service provider collects and stores historical cell site data for its own business purposes, perhaps to monitor or optimize service on its network or to accurately bill its customers for the segments of its network that they use. The Government does not require service providers to record this information or store it. The providers control what they record and how long these records are retained . . . . [T]he Government merely comes in after the fact and asks a provider to turn over records the provider has already created.

*Id.* at 611-12.

There is little distinction between historical and prospective cell site data. As in *Historical Cell Site Data*, here the government sought "the disclosure of the locations of cell site towers being accessed by [Wallace's] cell phone" as recorded in future records "captured, stored, recorded and maintained by the phone companies in the ordinary course of business." "While this information is 'prospective' in the sense that the records had not yet been created at the time the order was authorized, it is no different in substance from the historical cell site information . . . at the time it is transmitted to the government." *Booker*, 2013 WL 2903562, at *7. The information the government requested was, "in fact, a stored, historical record because it [was] received by the cell phone service provider and stored, if only momentarily, before being forwarded to law enforcement officials." *In re U.S. for an Order for Prospective Cell Site Location Info. on a Certain Cellular Tel.*, 460 F. Supp. 2d 448, 459 (S.D.N.Y. 2006). We therefore conclude that like historical cell site information, prospective cell site data falls outside the purview of the Fourth Amendment. As such, "the SCA's authorization of § 2703(d) orders for [prospective] cell site information if an application meets the lesser 'specific

and articulable facts' standard, rather than the Fourth Amendment probable cause standard, is not per se unconstitutional." *Historical Cell Site Data*, 724 F.3d at 615.

That said, even if accessing prospective cell site data did constitute a Fourth Amendment search, DPS's actions are covered by the good-faith exception to the exclusionary rule. "[T]he exclusionary rule is a judicially fashioned remedy whose focus is not on restoring the victim to his rightful position but on deterring police officers from knowingly violating the Constitution." *United States v. Allen*, 625 F.3d 830, 836 (5th Cir. 2010). As such, courts have carved out exceptions for police conduct "pursued in complete good faith" because the rule's "deterrence rationale loses much of its force" in such circumstances. *United States v. Leon*, 468 U.S. 897, 919 (1984) (quoting *Michigan v. Tucker*, 417 U.S. 433, 447 (1974)). In particular, the Supreme Court has held that the exclusionary rule does not apply when police officers "act[ed] in objectively reasonable reliance upon a *statute*" even if "the statute is ultimately found to violate the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 342 (1987).

The plain language of 18 U.S.C. § 2703(c) states that the government may obtain "a court order" requiring a cellular telephone company to turn over "record[s] or other information" related to its "customer[s]." Nothing in the text of the statute suggests that "other information" does not encompass prospective cell site data. Given the "strong presumption of constitutionality due to an Act of Congress," *United States v. Watson*, 423 U.S. 411, 416 (1976), and the absence of a "clear, controlling case explicitly stating that the government may not obtain real-time cell site location data under the SCA," *United States v. Espudo,* 954 F. Supp. 2d 1029, 1044 (S.D. Cal. 2013), it was reasonable for the officers to rely on the text of the statute. We cannot conclude that DPS officers "had knowledge, or [could] properly be charged with

knowledge, that the search was unconstitutional under the Fourth Amendment." *Leon*, 468 U.S. at 919. As such, the district court did not err by denying Wallace's motion to suppress.

## V.

In conclusion, we AFFIRM the district court's denial of Wallace's motion to suppress the evidence supporting his conviction in the firearms case. Having concluded that suppression is not warranted, we need not address Wallace's request for remand for resentencing regarding his aiding and abetting conviction, but instead DISMISS that aspect of his appeal as MOOT.