# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-40167

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ELOY SILVA,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
June 14, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CR-311-1

Before STEWART, Chief Judge, and JOLLY and WIENER, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Eloy Silva appeals the denial of his motion to suppress and his sentence. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40167

## I.

### FACTS AND PROCEEDINGS

In March 2015, the U.S. Marshals Service executed an arrest warrant on Silva for violation of his parole. After Silva was detained outside his trailer, two U.S. Marshals with the Gulf Coast Violent Offender Task Force conducted a protective sweep of the trailer to check for individuals inside. They did not have a search warrant. During the sweep, one of the marshals opened a compartment under a mattress and discovered a shotgun, ammunition, and body armor. No one other than Silva was found in the trailer or on the property.

Silva, a felon with an extensive criminal history, was charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Silva filed a motion to suppress the firearm and ammunition, claiming that (1) the protective sweep was neither reasonable nor permissible, and (2) alternatively, the officers exceeded the scope of a lawful protective sweep. After conducting an extensive suppression hearing, the district court denied Silva's motion. He subsequently pleaded guilty without a plea agreement.

Silva's presentence report reflected that his base offense level was 20 and, with a two-level reduction for acceptance of responsibility under § 3E1.1(a) of the United States Sentencing Guidelines ("Sentencing Guidelines" or "USSG"), his total offense level was 18.[1] Silva's extensive criminal history yielded a total criminal history score of 31, placing him in criminal history category VI.[2] As a result, Silva's range of imprisonment under

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 2K2.1 (U.S. SENTENCING COMM'N 2014). All references to the Sentencing Guidelines are to the 2014 edition, the edition applicable to this case.

[2] U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (U.S. SENTENCING COMM'N 2014).

No. 16-40167

the Sentencing Guidelines was 57 to 71 months.[3] Silva objected to the PSR, contending, *inter alia*, that he was entitled to a third level of reduction for acceptance of responsibility under USSG § 3E1.1(b). The district court overruled Silva's acceptance-of-responsibility objection, adopted the PSR, and sentenced him to 64 months of imprisonment followed by 3 years of supervised release. Silva timely appealed.

## II.
### ANALYSIS

Silva argues that the district court erred in denying his motion to suppress because (1) the protective sweep was not justified, and (2) alternatively, the officers exceeded the scope of a lawful protective sweep. Silva also contends that the district court erred procedurally by failing to reduce his offense level for acceptance of responsibility under USSG § 3E1.1(b).

### A. Motion to Suppress

When considering a district court's denial of a motion to suppress, we review its findings of fact for clear error and its conclusions of law de novo.[4] "In reviewing findings of fact, we view the evidence in the light most favorable to the party prevailing below, which in this case is the Government."[5]

A warrantless entry into a home is presumptively unreasonable.[6] Exigent circumstances, however, may justify a warrantless entry.[7] When a

---

[3] *Id.*

[4] *United States v. Henry*, 853 F.3d 754, 756 (5th Cir. 2017).

[5] *Id.* (quoting *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013)).

[6] *United States v. Howard*, 106 F.3d 70, 73 (5th Cir. 1997).

[7] *Id.*

person is subjected to a warrantless search, the government has the burden of proving that the search was justified.[8]

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."[9] Such a sweep is justified only when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."[10] When determining whether a protective sweep is justified, we consider the totality of the circumstances surrounding the officers' actions.[11] "[W]e 'review the entirety of the agents' investigative tactics, particularly those leading up to the exigency alleged to have necessitated the protective sweep.'"[12] If reasonable minds could differ on the whether the sweep was warranted, we do not second-guess the judgment of experienced law enforcement officers concerning the risks in a particular situation.[13]

*1. Was the Protective Sweep Justified?*

Silva contends that the protective sweep was not justified or permissible because there were no exigent circumstances. He contends alternatively that the agents created the exigent circumstances.

The evidence before the district court demonstrated that the marshals' protective sweep was justified. U.S. Marshal Alfredo Lujan, the "primary"

---

[8] *United States v. Garcia-Lopez*, 809 F.3d 834, 838 (5th Cir.), *cert. denied*, 136 S. Ct. 2036 (2016).

[9] *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

[10] *Id.* at 334.

[11] *Howard*, 106 F.3d at 74.

[12] *Id.* (quoting *United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995)).

[13] *United States v. Menchaca-Castruita*, 587 F.3d 283, 290 (5th Cir. 2009).

officer among the team of marshals that executed the warrant, testified that he reviewed Silva's criminal history before executing the arrest warrant. Lujan described Silva's criminal history as "pretty extensive." His numerous convictions included assault, aggravated kidnapping with a weapon, and making a terroristic threat. At the time of the instant arrest, there were seven outstanding warrants for Silva's arrest—three for impersonating a peace officer, at times with a weapon; three for "unlawful contract with a surety bond company"; and one for violation of parole. Lujan also testified that he was aware that Silva was a member of the Tango Blast gang, which "started [as] small street gangs and ha[s] grown while in prison and ha[s] actually done work for the cartels." Lujan had also received information that there might be a weapon in the trailer. Lujan testified that Silva's mother, who it turned out owned the trailer, was uncooperative with him regarding Silva's whereabouts.

When the officers arrived, Silva did not exit the trailer for more than one minute. Lujan testified that, even though the marshals had no indication that anyone else was inside the trailer, in light of his 13 years of experience, he believed the trailer could still contain a safety risk to the officers. Further, U.S. Marshal Ray Tamez, who conducted the sweep with Lujan, testified that they conducted the sweep because they were concerned for their safety, specifically that they could not be certain that no one else was inside the trailer.

At the end of the suppression hearing, the district court concluded that it was reasonable for the officers "to be concerned about other people who may be affiliated with the Defendant who would want to help [him and] that might still be in the trailer." The court explained that someone else could have been in the trailer and "could have stuck a gun out the window [and] shot at the officers." The district court ruled that, as a result, the protective sweep was justified.

5

Given the testimony presented at the suppression hearing, Silva's criminal history, his gang affiliation, and the officers' concern that someone might have been inside the trailer with a weapon, the district court did not clearly err in concluding that the officers were reasonably concerned about their safety. When we view the evidence in the light most favorable to the government, we are convinced that there were "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."[14]

*2. Did the Search Exceed the Scope of a Lawful Protective Sweep?*

In the absence of a search warrant, a protective sweep must be "quick and limited" and "narrowly confined to a cursory visual inspection of those places in which a person might be hiding."[15] "The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."[16]

Lujan testified that he spent about five to ten seconds in the trailer, and Tamez testified that he spent about 35 to 40 seconds in the trailer. Silva presented no evidence to contradict this testimony. Lujan testified that he inspected every crawl space in which an individual could hide. He removed cushions from two benches, looked under the mattress of a fold-out couch, and

---

[14] *Buie*, 494 U.S. at 334. Although Lujan testified that Silva "was still standing inside the trailer when opening the door" and was standing on the outdoor stairwell leading into the trailer, the district court assumed for purposes of the motion that Silva was outside of the trailer when he was arrested. Silva asserts that because his arrest occurred outside of the trailer, the warrantless search of the trailer was not permissible. This argument is unavailing. *See United States v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006) ("The protective sweep doctrine may apply even if the arrest occurs outside the home."), *abrogated on other grounds by Kentucky v. King,* 563 U.S. 452 (2011).

[15] *Buie*, 494 U.S. at 327.

[16] *Id.* at 335–36.

checked inside cabinets. Tamez found the firearm, ammunition, and body armor after he saw a large, "waterbed-type mattress on top of wood, box [sic] underneath." He testified that he believed the wooden box under the mattress was hollow and large enough for a person to hide inside, as it was "about seven, eight feet in length, maybe six feet wide" and "[a]bout a foot and a half tall." He testified that nothing prevented him from lifting the mattress or the plywood cover and that there was no locking mechanism on the wooden box.

The district court concluded that, based on the agents' testimony regarding their experience finding individuals in small and hollowed-out spaces, Tamez's lifting of the mattress "was certainly justified" because it was possible that a person could hide in the wooden compartment underneath it. Lujan, who testified that he has conducted hundreds of protective sweeps for more than 13 years, described the "very unique" hiding places in which he has discovered individuals: "I have located individuals in hollowed-out water heaters, false walls, false compartments in floor[s], false appliances, inside dryers, inside washers, underneath sinks, underneath benches, underneath clothing, closets. Anywhere where a person really wants to hide he could actually make himself hide." Tamez similarly testified that he has located individuals in "[d]ressers, hollowed-out dressers, hidden compartments in closets, underneath clothes, just a lot of places." Lujan also testified that he limits his protective sweeps to "areas that would be able to conceal a person."

Silva has failed to demonstrate that the district court clearly erred in determining that the compartment under the mattress was large enough to conceal a person, a conclusion that is amply supported by the uncontroverted evidence in the record. In light of Lujan's testimony regarding his experience locating individuals in "very unique" places and Tamez's unrefuted testimony that he believed that a person could have been hiding in the wooden compartment under the mattress, the search of the trailer, including the

wooden box under the mattress, did not exceed the scope of a lawful protective sweep.[17]

B. Acceptance of Responsibility

Silva received a two-level reduction under USSG § 3E1.1(a), but he contends that the district court erred in denying him a third reduction of one level for acceptance of responsibility under § 3E1.1(b). He maintains that the government improperly withheld a § 3E1.1(b) motion in retaliation for his exercise of his constitutional rights to file a motion to suppress and to request a hearing on it.

We review a district court's legal interpretations of the Sentencing Guidelines de novo and its factual findings for clear error.[18] "A factual finding is clearly erroneous only if, based on the entirety of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made."[19] We review "a district court's refusal to reduce a defendant's offense level for acceptance of responsibility under USSG § 3E1.1 with a standard 'even more deferential than a purely clearly erroneous standard.'"[20]

Section 3E1.1(b) provides for an additional one-level decrease to a defendant's base offense level for acceptance of responsibility if the following are satisfied:

---

[17] *See Garcia-Lopez*, 809 F.3d at 839 (concluding that a protective sweep that involved searching under a mattress in a trailer was permissible because "it was logical under the specific facts of this case to suspect that a person might be hiding in a hollowed box spring"); *cf. United States v. Ford*, 56 F.3d 265, 270 (D.C. Cir. 1995) (concluding that a search underneath a mattress exceeded the scope of a permissible protective sweep because nothing suggested that a person might have been hiding under the mattress and the searching agent "testified that it would have been '[v]irtually impossible' for someone to do so" (alteration in original)).

[18] *United States v. Castillo*, 779 F.3d 318, 321 (5th Cir. 2015).

[19] *Id.*

[20] *United States v. Washington*, 340 F.3d 222, 227 (5th Cir. 2003) (quoting *United States v. Maldonado*, 42 F.3d 906, 913 (5th Cir. 1995)).

[1] the defendant qualifies for a decrease under subsection (a), [2] the offense level determined prior to the operation of subsection (a) is level 16 or greater, and [3] upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently[.]

Amendment 775 to the Sentencing Guidelines, which became effective in November 2013, states that "[t]he government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."[21]

Before Amendment 775 took effect, panels of this court routinely affirmed the denial of a one-level reduction under § 3E1.1(b) when the government had to prepare for a suppression hearing.[22] It is now unclear, however, "to what extent [Amendment 775] was meant to reject our previous rule that a suppression hearing may justify withholding a Section 3E1.1(b) reduction."[23]

We need not determine as a general matter whether, in light of Amendment 775, the government may withhold a § 3E1.1(b) motion when, as

---

[21] U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. n.6 (U.S. SENTENCING COMM'N 2014); *United States v. Palacios*, 756 F.3d 325, 326 (5th Cir. 2014) (per curiam).

[22] *United States v. Delaurier*, 237 F. App'x 996, 998 (5th Cir. 2007) (per curiam) (concluding that the district court did not err in denying the defendant a third point for acceptance of responsibility under § 3E1.1(b) because "the government was forced to spend considerable time and effort defending the motion to suppress, and the defendant has not demonstrated an improper motive behind the decision"); *United States v. Cruz*, 199 F.3d 438 (5th Cir. 1999) (per curiam) ("Because Santa Cruz did not enter his guilty plea until after the district court held a hearing on his motion to suppress evidence, which required full preparation of the Government and the allocation of the district court's resources, the district court did not err in denying an additional one-point reduction for acceptance of responsibility under § 3E1.1(b)[.]"); *see also United States v. Gonzales*, 19 F.3d 982, 984 (5th Cir. 1994) (per curiam).

[23] *United States v. Pena-Gonzalez*, 618 F. App'x 195, 201 (5th Cir. 2015) (per curiam).

here, the defendant files and litigates a motion to suppress. This is because Silva's motion precluded the government and the sentencing court from "allocat[ing] their resources efficiently," a concern central to § 3E1.1.[24] In his motion to suppress, Silva maintained that the wooden compartment in which officers found the firearm, ammunition, and body armor was locked. He specifically stated that the officers "gained access to the locked compartment by prying open the hinges[.]" Silva argued that the "officers could not have reasonable [sic] believed a person could be hiding or pose a threat in a locked compartment." At the hearing, both Tamez and the law enforcement officer who took photos of the compartment testified that the compartment was not locked. Silva presented no evidence to the contrary and did not aver at any point during the hearing that the compartment was locked. As a result, the district court properly concluded that the compartment was not locked.

At Silva's sentencing hearing, the government opposed his request for a § 3E1.1(b) reduction because, it contended, "the entire basis [of] and all the allegations contained in the motion to suppress were falsified." The government noted that Silva's attorney had even presented a photograph of a compartment with a lock on it to support its motion. Silva's attorney did not contest that he had shown photographs indicating that the compartment at issue was locked, but he stated only that "those photos were never actually introduced into evidence" and that Silva's family provided him with those photos.

Because Silva's motion was based on the false claim that the compartment was locked, the district court did not err in denying Silva's

---

[24] U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(b) (U.S. SENTENCING COMM'N 2014).

No. 16-40167

request for an additional reduction under § 3E1.1(b).[25] Silva's motion "forced the government and the district court to allocate resources they would not have been required to allocate" if he had not falsely represented that the compartment was locked, a consideration underlying § 3E1.1.[26]

## III.
### CONCLUSION

The denial of Silva's motion to suppress and the sentence imposed following his guilty plea are AFFIRMED.

---

[25] *Cf. Castillo*, 779 F.3d at 325 (holding that when "the defendant has a *good faith* dispute as to the accuracy of the factual findings in the PSR, it is impermissible for the government to refuse to move for a reduction under § 3E1.1(b) simply because the defendant requests a hearing to litigate the dispute" (emphasis added)).

[26] *See United States v. Membrides*, 570 F. App'x 859, 860–61 (11th Cir. 2014) (per curiam).

11