# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 13, 2020

Lyle W. Cayce
Clerk

No. 19-50881

United States of America,

*Plaintiff—Appellee*,

*versus*

Jared Patton Roark,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CR-109-1

Before Barksdale, Elrod, and Ho, *Circuit Judges*.

Per Curiam:*

Jared Patton Roark appeals the district court's denial of his motion to suppress the firearms used to charge him with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). Austin police discovered the weapons in plain view during a protective sweep of Roark's apartment after his arrest for aggravated assault with a deadly weapon. Roark argues that the

---

*Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-50881

warrantless protective sweep was an unreasonable search because no exigent circumstances existed.  We disagree and affirm the district court's denial of the motion to suppress.

Officer Christopher Anderson of the Austin Police Department was tasked with executing an arrest warrant on Jared Roark for aggravated assault with a deadly weapon.  The warrant stemmed from a dispute Roark and his girlfriend, Lisa Hogan, had with Hogan's sister and her boyfriend, Jesus Mares.  During the altercation, Roark allegedly brandished a handgun, threatened Mares, and struck him over the head with the barrel of the gun.

In preparing to execute the warrant, Officer Anderson researched Roark's background.  He learned, *inter alia*:  Roark and Hogan were known members of the Red Guard, an anti-police faction of Antifa; they had been kicked out of the Red Guard for being too militant and extreme; they formed a splinter Antifa protest group called The Partisans; Roark attempted to set fire to another protester's sign, resisted arrest, and attempted to assault a police officer at the Texas State Capitol, according to the relevant arrest report; Hogan had been on a terrorist watch list in Georgia and had hit another person with a rock at a protest in Austin; and the utilities for Roark and Hogan's apartment were registered in the name of Jesse Arost, another Red Guard member who had been arrested for assault.  Roark also had a prior felony conviction barring him from possessing a firearm, yet he allegedly possessed the gun used in the assault.

Officer Anderson and four other Austin police officers arrested Roark the next day while Roark was walking his dog outside his apartment.  While Officer Anderson returned Roark's dog to the apartment, the other officers escorted Roark past the apartment and to the patrol car.  Roark then screamed in the direction of the apartment:  "Cindy, call George, the police

have me!  Cops, cops, cops, cops!  Call George Lobb!  Police!  Jesus is a f—ing snitch!  He's making s— up!  Call George!"

Meanwhile, Officer Anderson knocked on the apartment door and heard scuffling noises in the background.  Hogan answered the door, was ordered to step out of the apartment, and denied that any other individuals were inside.  Officer Anderson called for backup to perform a protective sweep of the apartment for unknown confederates and waited approximately two minutes outside the apartment with Hogan for his colleagues to arrive.  After securing Roark in the patrol car, two officers joined Anderson to conduct the protective sweep, during which they observed firearms in plain view.  This discovery formed the basis for a search warrant, leading to the seizure of those firearms, ammunition, and diagrams depicting assaulting police.

Under a conditional plea agreement, Roark pleaded guilty to the charged offense but reserved his right to appeal the denial of his motion to suppress.  In denying that motion, the district court held:  "The possibility that other persons remained in the apartment, along with a firearm the officers believed was in the apartment, suggested a possible threat that a reasonably prudent officer would believe should be pursued by entering the apartment to conduct a protective sweep."

On appeal, Roark contends that the district court erred by dismissing his motion to suppress.  He argues that there was no exigency to justify the protective sweep for three main reasons.  First, he maintains that Officer Anderson knew George Lobb was Roark's lawyer and, thus, not a threat.  Second, he asserts that the two minutes between Roark's arrest and the beginning of the sweep demonstrate the officers' lack of urgency.  And, third, he insists that the officers showed no concern for their safety while waiting with Hogan before conducting the sweep.  According to Roark, the officers

"observed no articulable facts during their minutes on the [apartment] threshold to support a reasonable belief that the apartment harbored someone threatening the officers' safety."

When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo, viewing the evidence in the light most favorable to the prevailing party. *United States v. Silva*, 865 F.3d 238, 241 (5th Cir. 2017). After reviewing the briefs, we AFFIRM the order denying Roark's motion to suppress for essentially the same reasons articulated by the district court.