# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2025

Lyle W. Cayce
Clerk

No. 24-30457

United States of America,

*Plaintiff—Appellee*,

*versus*

Kirk August,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:23-CR-23-1

Before King, Jones, and Oldham, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Kirk August pled guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He reserved the right to argue in this appeal that the district court should have granted his motion to suppress evidence. Finding no error, we AFFIRM.

## I. Factual Background

On May 14, 2022, the Lake Charles Police Department received a call about gunshots on the 700 block of N. Lyons Street, a residential street in Lake Charles, Louisiana. Officers Baccigalopi, Bernat, and Rainwater

responded. Baccigalopi arrived on scene and spoke with the caller, who pointed him to the blue home where August resided.

Baccigalopi, Bernat, and Rainwater descended on the home at virtually the same time. Baccigalopi and Bernat approached August's home through the next-door neighbor's property, and they encountered August standing in his backyard behind a chain-link fence. The backyard was cluttered with junk, which officers believed gave August ample cover to hide a weapon. A top-down convertible was parked in his driveway with the driver-side door left ajar and music playing from the radio. Mattresses were stacked against the main door to the home, preventing it from being used as an entrance.

Baccigalopi spoke with August while still standing on the neighbor's side of the fence. He asked August whether he had heard gunshots or had any "weapons or anything" on the property. August responded "no" to both of Baccigalopi's questions. Meanwhile, Rainwater had gotten held up in a conversation with the next-door neighbor, who explained to Rainwater that she had "just now" seen August firing a handgun in his backyard.[1] The neighbor also stated that August discharged firearms in his backyard frequently, and that stray bullets had previously struck her home. Rainwater promptly informed his colleagues that August might have a firearm.[2]

---

[1] Rainwater had assisted in executing a search warrant at August's home a year earlier when police located a .22 revolver in the home.

[2] This information was enough to give the officers reasonable suspicion that a crime had been committed. LA. REV. STAT. 14:94 prohibits the discharge of a firearm in a residential neighborhood. *See United States v. LeJeune*, 2021 WL 3926154, at *2 (W.D. La. 2021). And the officers were all aware soon after arriving at the scene that August was a felon barred from possessing a firearm.

Baccigalopi—still on the neighbor's side of the fence—then ordered August to walk backward with his hands on his head toward the fence. August was patted down, and no weapon was found on his person. He remained near the fence this entire time. Rainwater and Bernat entered the backyard and began conducting a protective sweep. Bernat testified that they entered the backyard "mostly" for safety reasons: "There was a lot of junk behind the house . . . So if he did have a firearm within close proximity, I'd rather be on that side." During the protective sweep, Bernat discovered shell casings on the ground and a large sign riddled with bullet holes. He returned to where August was standing and handcuffed him. August continued to contend that there was no gun on the property.

The government maintains that officers next decided to seek a warrant authorizing them to search the property. The officers knew they would have to remain at the scene while they waited for the warrant application's approval. Given that none of them had been able to locate the alleged firearm—and having little reason to trust August's claim that the house was empty—police decided to conduct a protective sweep of the home. But the only accessible door was locked. August told police that his sister had the only set of keys, which contradicted his previous statement that he had been taking a bath before police arrived.

Baccigalopi walked over to the vehicle parked in the driveway and removed August's keys from the ignition. While doing so, Baccigalopi noticed a baggie of methamphetamine in plain view near the center console. August was secured in the back of Baccigalopi's police vehicle. Officers then used the keys that were retrieved from the car to enter a side door of the house and conduct a protective sweep. The sweep lasted approximately three minutes, during which the officers located a magazine clip for a firearm. Baccigalopi and Bernat returned to the convertible. Bernat found a gray

plastic bag containing ammunition inside the side pocket of the open driver's door. Bernat stated that the ammunition itself was not in plain view.

Satisfied that they were not in imminent danger by remaining on the scene, police formally requested a search warrant for August's entire property. They remained on the scene until after they received and executed the warrant. Their search of August's property ultimately yielded a .22 caliber rifle, .410 shotgun, and ammunition.

## II. Procedural Background

August was charged with violating 18 U.S.C. § 922(g)(1) for knowingly possessing a firearm in and affecting commerce while knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year. The district court denied a motion by August to dismiss the indictment. August moved to suppress nearly all of the relevant evidence: (1) shell casings found in the backyard; (2) the magazine clip found in the home; (3) ammunition found in the car; and (4) firearms found in the home. A magistrate judge issued a report and recommendation that suggested the district court should deny the motion to suppress, reasoning that protective sweeps of the backyard and home were justified by exigent circumstances, and that any constitutional defect pertaining to the car search was excused under the independent source doctrine. The district court adopted the report and recommendation in full. August pled guilty but reserved the right to argue that the district court should have granted his motion to suppress. The district court sentenced August to 63 months in prison and three years of supervised release.

## III. Standard of Review

When considering a district court's denial of a motion to suppress, this court reviews the district court's factual findings for clear error and legal conclusions de novo. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).

A few words on the Fourth Amendment doctrines that the district court relied on, and then on how the standard of review applies to those doctrines.

## A. Protective Sweep Doctrine

Under the protective sweep doctrine, police may conduct, without a warrant, "a quick and limited search of premises for the safety of the agents and others present at the scene." *United States v. Mendez*, 431 F.3d 420, 428 (5th Cir. 2005) (citation omitted). A protective sweep is lawful if:

> (1) the government agents have a legitimate law enforcement purpose for being in the house [or curtilage]; (2) the sweep is supported by a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene; (3) the sweep is no more than a cursory inspection of those spaces where a person may be found; and (4) the sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and lasts no longer than the police are justified in remaining on the premises.

*Id.* (internal quotation marks and citation omitted). *See also United States v. Mendoza–Burciaga,* 981 F.2d 192, 196 (5th Cir. 1992) (explaining that exigent circumstances provide officers a legitimate law enforcement purpose to conduct a warrantless entry when "officers reasonably fear for their safety, where firearms are present, or where there is risk of a criminal suspect's escaping or fear of destruction of evidence") (citations omitted).

In evaluating the legality of a protective sweep conducted because of exigent circumstances, courts consider how "the scene of the search . . . would appear to reasonable and prudent men standing in the shoes of the officers." *United States v. Menchaca-Castruita*, 587 F.3d 283, 290 (5th Cir. 2009) (internal quotation marks and citation omitted). Where "reasonable minds could differ on [] whether the sweep was warranted," courts "do not

second-guess the judgment of experienced law enforcement officers concerning the risks in a particular situation." *United States v. Silva*, 865 F.3d 238, 242 (5th Cir. 2017) (citation omitted).

In the context of appellate review, protective sweep cases present mixed questions of law and fact, with the ultimate issue of whether there was reasonable suspicion of danger being subject to de novo review. *United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010). This court, however, "view[s] the evidence [going toward reasonable suspicion] in the light most favorable to the party prevailing below, which in this case is the Government," and gives "due weight to inferences drawn from those facts by . . . local law enforcement officers." *United States v. Henry*, 853 F.3d 754, 756 (5th Cir. 2017) (internal quotation marks and citations omitted).

## B. Independent Source Doctrine

Under the independent source doctrine, "'information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source.'" *United States v. Hearn*, 563 F.3d 95, 102 (5th Cir. 2009) (quoting *Murray v. United States*, 484 U.S. 533, 538–39, 108 S. Ct. 2529, 2534 (1988)). This court conducts a two-step analysis to determine whether the independent source doctrine cures an issue when police subsequently obtain a warrant, asking whether (1) "the warrant affidavit, when purged of tainted information gained through the initial illegal entry, contain[ed] sufficient remaining facts to constitute probable cause"; and (2) "the illegal search affect[ed] or motivate[d] the officers' decision to procure the search warrant." *Id.* (citation omitted).

In the context of appellate review, this court reviews de novo a district court's determination that a search warrant affidavit establishes probable cause after the warrant has been purged of potentially "tainted" information, and it reviews for clear error a district court's findings regarding whether an

unlawful prior search or entry motivated officers' decision to obtain a warrant. *See United States v. Hassan*, 83 F.3d 693, 697 (5th Cir. 1996) (citations omitted).

## IV. Analysis

August contends that law enforcement erred at every step of their operation: (1) the protective sweep of his backyard; (2) the protective sweep of his home; (3) searches of his car; and therefore (4) the execution of a search warrant in his home. His claims pertaining to each of these searches are considered in turn.

### A. Protective Sweep of the Backyard

August argues that the protective sweep doctrine did not justify the search of his backyard because police hopped the gate and did not stay nearby to prevent him from grabbing a weapon but continued to search beyond his immediate vicinity. August does not cite an apposite case to support his argument that the protective sweep of his backyard was unlawful. His argument fails.

August was not arrested until after law enforcement officers had located shell casings and concluded their protective sweep of his yard. He acknowledged in his objection to the report and recommendation that his lawn was "surrounded by hurricane fencing and filled with spillover objects from the home's interior." Without a protective sweep of the entire backyard, it remained possible that someone else might be present, or that August's questioning might end without an arrest, at which point he could have accessed a firearm hidden in the yard.

Police had reasons to distrust August's insistence that there was no firearm on the property: their knowledge of his felon status, and his direct contradictions during their limited encounter. And the presence of a gray

convertible in the driveway—top down, driver door left ajar, keys still in the ignition, and music playing from the radio—was potentially suggestive of a recent visitor's arrival or a third party's presence, especially because August claimed he had just been taking a bath before officers arrived. The chaos, contradictions, and incredible story that August attempted to sell the officers, when considered together and in the light most favorable to the government, made it completely reasonable for police to fear that someone—or something—else hiding in August's backyard posed a serious threat to their safety.

August has failed to show that the protective sweep of his backyard was unlawful. The district court did not err in its refusal to suppress the spent shell casings.

## B. Protective Sweep of the Home

August argues that the protective sweep doctrine did not justify a search of his home because "officers had been safely outside the home for almost seven minutes" when they decided to enter, "officers had already isolated August," and "there was nothing to suggest that destruction of evidence was likely or that anyone even remained in the home." His argument relies primarily on *United States v. Manchaca-Castruita*, 587 F.3d 283 (5th Cir. 2009), where this court held that exigent circumstances could not justify police sweeping a home suspected of storing illegal marijuana because there was no evidence that any person remained inside the home, officers stood safely outside with bystanders even further removed from the home, and a search warrant could readily have been obtained. *Id.* at 294–95.

This case is different. Unlike *Manchaca-Castruita*, (1) the suspected contraband—firearms—could be used to jeopardize the safety of law enforcement; (2) the suspect had not left the home, denied any personal knowledge of a firearm, and contradicted himself to police, and a car

appeared to have recently arrived, which introduced the possibility that another person on the property possessed a firearm; (3) there were no witnesses who had been inside of August's home to confirm whether accomplices were inside; (4) the door to August's home was closed, suggesting there was no last-minute escape; (5) nobody at the property received a warning that law enforcement was being contacted, likely frustrating plans for a last-minute escape; (6) the spent shell casings in the backyard confirmed that a firearm had probably been discharged at some point on the property; and (7) the incident occurred on the weekend, potentially making it more difficult for officers to communicate with a magistrate and to obtain a search warrant. *See id.* at 285–88, 294.

Case law tends to reflect that exigent circumstances are unlikely to exist if there is "no articulable reason to believe that someone else might be inside [the] residence." *Id.* at 295. *See also United States v. Carter*, 360 F.3d 1235, 1241 (10th Cir. 2004) (granting motion to suppress) ("[T]he government points to *no reason* to believe that other people were in the garage, or even the house.") (emphasis added). The outcome is typically different, though, if law enforcement had at least a reasonable belief that another dangerous person might be hiding in the residence that they decided to sweep. *See United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001) ("A protective sweep of a suspect's house may be made . . . if the arresting officers 'have reasonable grounds to believe that there are other persons present inside who might present a security risk.'") (quoting *United States v. Merritt*, 882 F.2d 916, 921 (5th Cir. 1989) (internal citation omitted)); *United States v. Maldonado*, 472 F.3d 388, 394 (5th Cir. 2006) (determining that a protective sweep was justified based in part on the fact that agents were exposed in an open area surrounding a trailer with "no certain knowledge" whether others might be in the trailer) (subsequent history omitted).

It cannot be said that police had no articulable reason to fear that someone remained in August's home.  After sweeping his backyard, the officers knew that (1) at least two neighbors heard gunshots, and the next-door neighbor reported seeing someone on the property firing a weapon; (2) spent shell casings littered the backyard; (3) August had little to no credibility; (4) a car that looked as if it had just arrived was parked in the driveway; and (5) most entry points to the house were barricaded.  *See, e.g.*, *United States v. Cousins*, 841 F. App'x 885, 899 (7th Cir. 2021) (noting that an occupant's "nervous" and "evasive" demeanor when questioned by officers supported a protective sweep of a home, especially when police are already aware of a firearm's presence on the property).  It makes no difference that officers chose to investigate these concerns only after arresting August.  *See Maryland v. Buie*, 494 U.S. 325, 333 (1990) ("[T]here is an analogous interest . . . in [officers] taking steps to assure themselves that the house in which a suspect . . . has just been[] arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack."). Any remaining doubt as to the reasonableness of the officers' concerns is dispelled by the deferential review that police are entitled to in this context. *See Silva*, 865 F.3d at 242 (protective sweep standard) (where "reasonable minds could differ on . . . whether the sweep was warranted," a court will not "second-guess the judgment of experienced law enforcement officers"); *Henry*, 853 F.3d at 756 (appellate review standard) (this court views the evidence going toward reasonable suspicion "in the light most favorable to the party prevailing below," and gives "due weight to inferences drawn from those facts by . . . local law enforcement officers").

No. 24-30457

August has failed to show that the protective sweep of his home was unlawful. The district court did not err in its refusal to suppress the magazine clip.[3]

## C. Searches of the Car

August argues that law enforcement twice violated the Fourth Amendment in connection with their searches of the car parked in his driveway. Officer Baccigalopi walked over to the car and retrieved the keys from the ignition after August claimed that his sister had the only key to the house. He noticed a baggie of illicit drugs when he reached for the keys. Police returned after sweeping the backyard and the home. They conducted a more thorough search of the car, recovering methamphetamine and ammunition. The magistrate judge held that the independent source doctrine excused any constitutional defect in these searches of the car without analyzing whether the searches were in fact constitutional. We similarly limit our discussion to applicability of the independent source doctrine due to insufficient briefing as to whether (1) the protective sweep doctrine could justify the police entering the car, (2) the driver's side door's being left open removed any expectation of privacy, or (3) either the protective sweep doctrine or plain view doctrine authorized law enforcement to acquire the keys.

August argues that the independent source doctrine cannot cure defects in the car searches because (1) there would be no probable cause supporting the warrant without the magazine clip (which was obtained using the house keys that were retrieved during the first car search) and ammunition (which was recovered during the second car search), and (2) the

---

[3] The magazine clip was alternatively admissible under the independent source doctrine as discussed below.

magazine clip and ammunition compelled the officers to pursue a search warrant.[4] His argument proves unpersuasive.

First, aside from mentioning the magazine clip and ammunition, the search warrant affidavit noted that law enforcement officers responded to a report of multiple shots fired in the area; another witness advised police officers that she observed the resident of 710 N. Lyons outside with a firearm; officers observed multiple spent shell casings on the property of the residence; officers located Kirk August at the residence; and officers confirmed that August stays at the residence.

"Probable cause does not require proof beyond a reasonable doubt." *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). "[A] magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* Scrubbed of the allegedly tainted magazine clip and ammunition, and considering the issue de novo, the warrant affidavit still contained sufficient remaining facts to provide the magistrate a substantial basis for concluding that a search would uncover evidence of wrongdoing. The magistrate could reasonably infer from eyewitness testimony and shell casings on the property that August had discharged a firearm in violation of Louisiana law.[5]

---

[4]August also argues that the search warrant would not have been granted without police locating the shell casings in his backyard. However, police clearly did not violate the Constitution in conducting the protective sweep that produced the shell casings.

[5] *Cf. United States v. Coleman*, 540 F. Supp. 3d 596, 611 (S.D. Miss. 2021) (holding that search warrant was not supported by probable cause) ("The affidavit includes the informant's statement that Coleman discharged a firearm on the property against an intruder 'several weeks ago.' But the affiant does not state how the informant obtained this information, whether by personal observations or from an eyewitness."); *United States v. Wooldridge*, 2016 WL 11473559, at *6 (E.D. Tex. Apr. 22, 2016) (same) ("Here, the search warrant affidavit describes in detail the particular place to be searched and is appropriately limited in scope[.] However, the affidavit fails to provide the state judge with facts from

Second, August contends "it was not until after the officers searched the home and car, finding a magazine and ammunition, that the officers requested a search warrant." But the district court's determination that the "tainted" magazine clip and ammunition evidence did not influence the officers is a finding of fact that must stand unless clearly erroneous. And there is ample evidence in the record to support it. For example, officers arrested August immediately after they located spent shell casings in the backyard. At that point, probable cause existed to obtain a proper search warrant. Police retrieved house keys to access the home and reported that they swept the home to secure the area while they waited for a search warrant. This narrative accords with the warrant affidavit, which noted that officers "cleared the residence . . . for safety and to check for any injured parties." August has not identified any substantial evidence that undermines this narrative. The district court did not clearly err by determining that officers decided to seek a search warrant after they discovered the spent shell casings but before they discovered the magazine clip or ammunition.

To summarize why the district court did not err in applying the independent source doctrine: The magazine clip and ammunition were not necessary to establish probable cause and did not motivate the officers to obtain a search warrant. The magistrate issued a search warrant that authorized police to search all property located at 710 N. Lyons Street, including the "interior of the residence, vehicles located on the property, and curtilage of the property." This encompassed the areas where the magazine clip and ammunition were located. The independent source doctrine permits the magazine clip and ammunition to be introduced as

_____

which he could infer that the firearm was contraband, that it had been used in a crime, and/or that it was linked to any wrongdoing." (citation omitted)).

evidence in these circumstances regardless whether the initial car searches were lawful.

### D. Execution of Search Warrant

The district court correctly allowed the firearms to be admitted into evidence because the firearms were recovered through the execution of a valid search warrant that was obtained without regard to bad acts by law enforcement. The district court could have alternatively admitted the "smoking gun" in this case under the good-faith exception to the exclusionary rule. Under that exception, "if the evidence was obtained by law enforcement officers who relied on the warrant in objectively reasonable good-faith, then the evidence obtained during the search is admissible." *United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010) (citation omitted). "This is true even if the evidence in the affidavit . . . was not sufficient to establish probable cause." *Id.*

August offers scant evidence of bad faith, primarily relying on exchanges captured by officer body-cam footage that indicate several officers had a negative opinion of August due to previous interactions with him. But this evidence fails to move the needle because the good-faith inquiry is strictly objective. *See United States v. Massi*, 761 F.3d 512, 530 (5th Cir. 2014) ("In determining whether the good faith exception applies, 'we do not attempt an "expedition into the minds of police officers" to determine their subjective beliefs regarding the validity of the warrant.'" (citations omitted)).

August does not even attempt to allege that it was objectively unreasonable to rely on the warrant. Nor could he. This is not a case in which "the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct.

No. 24-30457

3405, 3421 (1984) (citation omitted). It is not a case in which the issuing magistrate "wholly abandoned his judicial role," or the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (internal quotation marks and citations omitted). And it is not a case in which the warrant is "so facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." *Id.* The good-faith exception therefore supports admitting the firearms into evidence even if there were a defect in the warrant.

## V. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.